ANTHONY MORIZZO, Plaintiff-Appellee, *v.* KAY LAVERDURE *et al.*, Defendants-Appellees. ("K" Koncrete, Inc., *et al.*, Third-party Plaintiffs-Appellees; Bena Associates, Inc., Third-Party Defendant-Appellant; Baranyk-Popwych, Ltd., Third-Party Defendant).

First District (2nd Division)   No. 83—1125

Opinion filed September 18, 1984.

DOWNING, J., specially concurring.

Stephen E. Sward and David C. Gustman, both of Rooks, Pitts, Fullagar & Poust, of Chicago, for appellant.

Aaron M. Spiezer, of St. Charles, and Eric Ferleger, of Chicago, for appellees "K" Koncrete, Inc., Ronald Laverdure, and Patricia Laverdure, d/b/a "K" Koncrete Company.

JUSTICE DOWNING delivered the opinion of the court:

Does a cause of action for active-passive indemnity continue to exist in Illinois as the result of the adoption of the Contribution Among Joint Tortfeasors Act (hereinafter the Contribution Act) (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*)? The trial court denied a motion to dismiss a third-party complaint based exclusively on active-passive indemnification, and certified three questions to this court. We granted interlocutory review. The pleadings allege the following facts.

Plaintiff Anthony Morizzo, the owner of Morizzo's Ridgewood Funeral Home in Chicago, entered into a contract with Bena Associates, Inc. (hereinafter Bena), for the construction of a building addition according to the plans and specifications prepared by architect Barnyk-Popwych, Ltd. Bena, as the general contractor, entered into a subcontract with Kay Laverdure, William Laverdure, Ronald Laverdure and Patricia Laverdure, d/b/a "K" Koncrete Company, later incorporated as "K" Koncrete, Inc. (hereinafter "K" Koncrete), to perform concrete, foundation and flatwork services for the project.

In performing its excavation work according to the subcontract, "K" Koncrete relied upon plans drafted by the architect and provided by Bena. The plans of the original structure were inaccurate in that they showed an L-lot line footing on the building that did not, in fact, exist. "K" Koncrete excavated to approximately four feet, or to the bottom of the foundation of the original building, which led to its collapse on May 8, 1979.

Plaintiff filed suit in November 1979, seeking compensation for the damages to his property and business; in his third amended complaint, he named both Bena and "K" Koncrete as defendants. Thereafter, a settlement agreement was reached between plaintiff and Bena. Plaintiff was paid the sum of $67,500, and Bena was dismissed from the action with prejudice.

"K" Koncrete, on November 6, 1981, initiated a third-party action against Bena and the architect. In its amended complaint, "K" Koncrete alleged, *inter alia,* that the architect and Bena submitted plans which were wrong and inaccurate; that it had to rely on the accuracy of the plans; that Bena and the architect had a duty to accurately in-

form it of the building's foundation; that it worked only at the direction and under the control of Bena; and that, therefore, any liability to plaintiff would be based solely on its passive conduct in performing the contract pursuant to Bena's direction and control. "K" Koncrete further alleged that any harm to plaintiff was the proximate result of the active and wrongful conduct of Bena and the architect. "K" Koncrete requested that if it was found liable to plaintiff, a judgment in like sum should be entered in favor of itself against the architect and Bena jointly and severally, and that it recover from the architect and Bena its costs and attorney fees.

In its motion to dismiss the third-party complaint, Bena claimed that section 2(c), (d) of the 1981 Contribution Act[1] protects a settling defendant, such as itself, from further liability to any alleged joint tortfeasor. The trial court denied Bena's motion to dismiss, and Bena thereafter requested that the court make a finding pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), urging that the trial court's order involved questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation.

The trial court certified the following questions of law as a result of Bena's request:

"1. A question of law exists as to whether a cause of action for active-passive indemnity exists in Illinois in light of the Contribution Statute, Ill. Rev. Stat. Ch. 70 sec. 301 et seq.

2. If the answer to the first question is in the affirmative, a question of law exists as to whether a pretort relationship between the indemnitor and indemnitee is a necessary prerequisite to an action for active-passive indemnity?

3. If the answer to the second question is in the affirmative, a question of law exists as to whether a pretort relationship as

---

[1]The relevant portions of the Act are:
"Sec. 2. Right of Contribution.

\* \* \*

(c) When a release or convenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." Ill. Rev. Stat. 1981, ch. 70, pars. 302(c), (d).

follows:

> a subcontractor, who is sued by plaintiff for acts of negligence that allegedly resulted in injury to the plaintiff, brings a third-party action against the general contractor for indemnity;
>
> is within the scope of a pretort relationship as that term was used by the First District Appellate Court in *Van Jacobs v. Parikh*, 97 Ill. App. 3d 610 (1981) which will allow the potentially liable defendant to seek indemnity based on the active-passive theory."

Application for leave to appeal to this court was subsequently granted.

## I

■ On appeal, Bena contends that the Contribution Act has superceded the judicially created concept of active-passive implied indemnity, and that by enacting the statute, the legislature created an express and exclusive remedy for joint tortfeasors seeking apportionment of their relative culpabilities. As provided in the Act, a tortfeasor who settles with a claimant "is discharged from all liability for any contribution to any other tortfeasor." (Ill. Rev. Stat. 1983, ch. 70, par. 302(d).) Bena thus argues that if "K" Koncrete is allowed to bring Bena, who has already settled with plaintiff, back into this lawsuit under the theory of indemnity, the legislative scheme will be undermined.

## A

### PRE-CONTRIBUTION ACT

Before this issue is addressed, the development of the theory of indemnification in Illinois will be briefly examined.

Indemnity is a common law doctrine which shifts the entire loss from one tortfeasor, who has been compelled to pay the loss, to another. (Prosser, Torts sec. 51, at 310 (4th ed. 1971).) Some cases have held that a pretort relationship with the indemnitor must be shown as well as some significant difference in the nature of their respective conduct which justifies a shifting of liability. (See, *e.g., Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 230-31, 234 N.E.2d 790.) Other cases have recognized such implied indemnity, even in the absence of a pretort relationship. (See, *e.g., Loehr v. Illinois Bell Telephone Co.* (1974), 21 Ill. App. 3d 555, 558, 316 N.E.2d 251.) In indemnity, the measure of recovery is all or nothing. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935.) Illinois previ-

ously adhered to the common law rule barring contribution among tortfeasors. (See *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 193-94, 229 N.E.2d 769.) The concept of implied indemnification based upon the active-passive negligence doctrine was developed and expanded by the courts in order to mitigate the harsh effects of the no-contribution bar.

The right to indemnity stands upon the principle that everyone is responsible for the consequences of his own acts. (*Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 190, 229 N.E.2d 769.) Indemnity can be express, based upon the agreement of the parties, implied by operation of law, or implied by the courts based upon the theory of active-passive negligence.

In 1977, the supreme court overturned the long-standing common law rule which prohibited contribution among tortfeasors. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied sub nom. Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849.) In *Skinner*, which involved a workman's compensation claim, the original defendant filed a third-party complaint against plaintiff's employer claiming contribution. The supreme court held there was no valid reason for the continued existence of the no-contribution rule.

## B

### Post-Contribution Act

In 1979, the General Assembly adopted the Contribution Act. As was said in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 8-9, 461 N.E.2d 382, "[t]he statute, as adopted in Illinois, was intended to codify the *Skinner* decision, not to diminish its scope"; and " '[t]he rule adopted in *Skinner* was codified and clarified by the General Assembly in 1979 in the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*).' These unanimous utterances filed so recently should put to rest any question as to whether this court believes that the Contribution Among Joint Tortfeasors Act as adopted in this State was intended to modify *Skinner* rather than to codify it."

To respond to the first of the certified questions, we must look at the intent of the legislature. If legislative intent is clear and unambiguous and can be ascertained from the language of the statute, that intent must prevail. *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, 167 N.E.2d 169; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, 361 N.E.2d 585; *People ex rel. Callahan v. Mar-*

*shall Field & Co.* (1980), 83 Ill. App. 3d 811, 813-14, 404 N.E.2d 368.

But, the Contribution Act is silent with respect to the interplay between its intent and the right of express or implied indemnity. We therefore examine some pertinent prepassage happenings.

In 1976 (prior to the *Skinner* opinion), an Illinois Judicial Conference Study Committee On Indemnity, Third Party Actions and Equitable Contributions, reported to the annual judicial conference. The committee recommended the adoption of the principle of contribution among joint tortfeasors in Illinois. It also recommended that the legislature adopt a statute similar to the New York statute modified, amongst other provisions, to state:

> "Sec. 5 Rights of Persons Entitled to Damages Not Affected; Rights of Indemnity or Subrogation Preserved.
>
> * * *
>
> (b) *Nothing contained in this article shall impair any right of indemnity* or subrogation under existing law except that the right to indemnification of one personally at fault shall be limited to those circumstances where he merely fails to discover the dangerous condition created by another." (Emphasis added.) Report of the Illinois Judicial Conference 198, 226 (1976).

The New York statute, as amended in 1974, provides, "Nothing contained in this article shall impair any right of indemnity or subrogation under existing law." N.Y. Civ. Prac. sec. 1404(b) (McKinney 1976).

The Uniform Contribution Among Joint Tortfeasors Act (1955 rev.) provides in section 1(f):

> "(f) *This Act does not impair any right of indemnity under existing law.* Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation." (Emphasis added.) 12 Uniformed Laws Annotated 63-64 (1975).

In adopting the Contribution Act in 1978, the legislature ignored the New York statute, the Judicial Conference Committee's recommendation, and the Uniform Act. The statute is silent with respect to the continued vitality of the common law doctrine of express or implied indemnity.

We have not been able to determine if the legislature intentionally rejected the suggested language. Senate Bill 308, as introduced into the legislature, did not contain any such language. And, we find no reference to this topic in the transcripts of either the Senate or House

proceedings. We can assume that in the legislative process, prior to the adoption of the Contribution Act, the language of the New York statute, the Uniform Act, as well as the recommendations of the Judicial Conference Committee, were considered. Even if considered and rejected, this would only be a factor to consider but would not conclusively determine the legislative intent. (See *People ex rel. Callahan v. Marshall Field & Co.* (1980), 83 Ill. App. 3d 811, 815-16.) "K" Koncrete argues the legislature "did not act to curtail indemnity when it passed the Contribution Act." But, on the other hand, failure by the legislature to preserve the right of express or implied indemnity strongly suggests an intent to eliminate the judicially created doctrine in active-passive tort cases.

Does the fact that the legislature, ignoring the various suggestions, failed to include specific language preserving the right of express or implied indemnity clearly indicate that it did not intend to preserve such right?[2]

As the supreme court stated in *Doyle*, the legislature adopted the Contribution Act to codify the decision of *Skinner*. The *Skinner* court, in rejecting the continued existence of the no-contribution rule, acknowledged that the active-passive theory of indemnity was designed to mitigate the harsh effect of the application of the no-contribution rule. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 12-13.) It seems reasonable to conclude that the legislature, in adopting the Contribution Act based on *Skinner*, was also rejecting the active-passive negligence theory of indemnity. Therefore the legislature intentionally did not include the suggested language that "[n]othing shall impair any right of indemnity ***."

In *Heinrich*, the supreme court did not answer the question. Citing numerous articles and the then one reported decision in this State (*Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979), the court noted the issue "is an important one which awaits resolution in light of the developing law regarding the role of contribution in Illinois." *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 350.

The first case to address the issue of the viability of indemnity in Illinois after the enactment of our contribution statute was *Van Jacobs*. There, the appellate court stated that "[t]he contribution act has

---

[2]See 2A Sutherland, Statutory Construction sec. 48.04, at 197 (4th ed. 1973):

"History of enactment process.

The events occurring immediately prior to the time when an act becomes law comprise a most instructive source for information indicative of what the legislature intended it to mean."

not extinguished indemnity in Illinois but instead, permits the courts to place indemnity back upon its theoretical foundation." (*Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 613.) Decisions subsequent to *Van Jacobs* have interpreted it as authority for the principle that implied indemnification in tort cases is still a viable concept. (*Bednar v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 454, 457, 436 N.E.2d 46; *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 732-33, 442 N.E.2d 1367; *Winfield Design Associates, Inc. v. Quincy Jefferson Venture* (N.D. Ill. 1983), 569 F. Supp. 748, 749 n.4; *Davis v. FMC Corp.* (C.D. Ill. 1982), 537 F. Supp. 466, 467-68; see also *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 97, 463 N.E.2d 792, where the court recognized that "upstream" indemnity is allowable in strict liability cases.) However, none of these cases addressed the question raised by the failure of the legislature to provide for the specific preservation of the right of express or implied indemnity.

As we interpret *Van Jacobs*, this court held that implied indemnity is not extinguished by the passing of the Contribution Act for cases involving some pretort relationship between the parties which gives rise to a duty to indemnify, *e.g.*, in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant). In *Lowe*, this court held that implied indemnity was still viable with respect to "upstream" claims in a strict liability action.

Except possibly for those causes of action based on the theories of indemnity just enumerated, it is our opinion that the Contribution Act extinguished a cause of action for active-passive indemnity in Illinois.

## II

■ "K" Koncrete's amended third-party complaint is based on the active-passive theory of indemnity in negligence. In fact, it alleges that although it was the subcontractor actually performing the work which caused plaintiff's building to collapse, if negligent it was only passively negligent, whereas Bena and Baranyk-Popwych were actively negligent. The third-party plaintiffs' complaint, not being based on any theory of vicarious liability, but rather on active-passive negligence, should have been dismissed by the trial court. The judgment must be reversed and the cause remanded to the circuit court of Cook County with the answer of "no" to the certified question of "whether a cause of action for active-passive indemnity exists in Illinois in light of the Contribution Statute, Ill. Rev. Stat. Ch. 70 sec. 301 et seq."

In view of our resolution of the certified question, it is not important to dwell on the characterizations in the amended third-party complaint. Suffice it to say, however, an appropriate question might be

raised based on the facts before us as to whether "K" Koncrete was passively negligent.

Reversed and remanded.

HARTMAN, P.J., and O'CONNOR, J., concur.

JUSTICE DOWNING specially concurring:

My opinion before the court answered the question "no" as to "whether a cause of action for active-passive indemnity exists in Illinois in light of the Contribution Statute, Ill. Rev. Stat. Ch. 70 sec. 301 et seq."

Before proceeding with the additional comments, may I point out that it is not unprecedented for a separate concurrence to be written by the author of an opinion. See, *e.g.*, Justice Brennan's concurrence to the Brennan opinion for the court in *Abbate v. United States* (1959), 359 U.S. 187, 196, 3 L. Ed. 2d 729, 735, 79 S. Ct. 666, 671; accord, *Wheeling Steel Corp. v. Glander* (1949), 337 U.S. 562, 576, 93 L. Ed. 1544, 1553, 69 S. Ct. 1291, 1299, where Justice Jackson noted, "It cannot be suggested that in cases where the author is the mere instrument of the Court he must forego expression of his own convictions." See also *Hawkins v. Superior Court* (1978), 22 Cal. 3d 584, 595, 586 P.2d 916, 923, 150 Cal. Rptr. 435, 442.

In my opinion, I believe that with the passage of the Contribution Act, it is reasonable to conclude that the legislature intended that, without qualification, implied indemnity should no longer exist. I see no reason to distinguish between vicarious liability, indemnity in tort cases, or cases alleging "upstream" strict liability.