**Robert JETHROE, Plaintiff,**

**v.**

**KOEHRING COMPANY and Allied Construction Equipment Company, Defendants.**

**ALLIED CONSTRUCTION EQUIPMENT COMPANY, Third-party plaintiff,**

**v.**

**H.H. HALL CONSTRUCTION COMPANY, Third-party defendant.**

Civ. No. 83–3361.

United States District Court, S.D. Illinois, E. St. Louis Division.

March 8, 1985.

Dennis W. Shevlin, Cook, Shevlin, Keefe & Chatham, Ltd., Belleville, Ill., for plaintiff.

David R. Jones/James C. Cook, Walker & Williams, P.C., Belleville, Ill., for defendant Allied Const.

Peter von Gontard, Paul N. Venker, Belleville, Ill., for defendant Koehring.

John W. Leskera, Robert D. Francis, Dunham, Boman & Leskera, East St. Louis, Ill., for third party defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court are third party defendant H.H. Hall Construction Company's (Hall) Motion to Dismiss Count 1 of the third party complaint (Document No. 53) and Hall's Motion to Dismiss Count 1 of the crossclaim of Koehring Company (Koehring) (Document No. 55). Plaintiff brings this action for damages sustained from an injury incurred while working in a basket which was lifted by a crane manufactured by Koehring, distributed by Allied, and sold to Hall, plaintiff's employer.

Both of Hall's Motions to Dismiss assert that implied indemnity no longer exists in Illinois, but that if it does, Allied, in its third party complaint, and Koehring in its crossclaim, fail to allege a qualitative distinction between the conduct of Hall and that of Allied and Koehring. On May 31, 1984, this Court, in response to a Motion to Dismiss Count 1 of the third party complaint, dismissed Count 1 of the third party complaint for failure to properly allege a pre-tort relationship giving rise to a duty to indemnify, but granted Allied leave to amend. Allied amended Count 1 of the third party complaint on June 15, 1984. On August 22, 1984, Koehring cross-claimed Hall for indemnity and contribution.

The issue before the Court, as has been since the advent of the Illinois Contribution Act, is whether implied indemnity survived the birth of contribution among joint tortfeasors. The Illinois Supreme Court has not resolved this issue. Therefore, as is so often the case, this Court must engage in "judicial telepathy" in order to ascertain what the Illinois Supreme Court would do if it faced the issue. *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir.1978). *Cf. Lamb v.*

*Briggs Mfg., A Division of Celotex Corp.,* 700 F.2d 1092 (7th Cir.1983).

Traditionally, implied indemnity was a common law doctrine which provided for the complete shifting of liability on a showing of a pre-tort relationship between the parties and a qualitative distinction between their conduct. Contribution, on the other hand, is a statutory remedy in Illinois which attempts to apportion liability according to the relative fault of the parties. It involves the sharing of damages in proportion to fault and is available to all parties "subject to liability in tort arising out of the same injury...." Ill.Rev.Stat.Ann. ch. 70, § 302(a) (Smith-Hurd 1984).

Prior to the enactment of contribution among joint tortfeasors, the implied indemnity doctrine was expanded to avoid the harshness of a no-contribution rule. The courts first began to change a "qualitative distinction" in the parties conduct to "quantitative difference" in their conduct. *Implied Indemnity After Skinner and The Illinois Contribution Act: The Case for a Uniform Standard,* 14 Loy.U.Chi.L.J. 531, 536 (1982). Then the courts did away with the pre-tort relationship in cases in which the disparity in fault was great. *Id.* at 538.

In *Van Jacobs v. Parikh,* 97 Ill.App.3d 610, 52 Ill.Dec. 770, 422 N.E.2d 979, (1981), a panel of the Appellate Court of Illinois, First District, held that the birth of the contribution did not extinguish indemnity in Illinois, but instead placed indemnity back on its traditional foundation. *Id.,* 52 Ill.Dec. at 772, 422 N.E.2d at 981. Thus, the court reinstated both the pre-tort relationship and the qualitative distinction between the conduct of the parties requirements. Decisions subsequent to *Van Jacobs* have interpreted it as authority for the proposition that implied indemnity is still a viable concept. *See LeMaster v. Amsted Industries, Inc.,* 110 Ill.App.3d 729, 832–33, 66 Ill.Dec. 454, 442 N.E.2d 1367 (1982); *Bednar v. Venture Stores, Inc.,* 106 Ill. App.3d 454, 457, 62 Ill.Dec. 464, 436 N.E.2d 46 (1982).

In *Heinrich v. Peabody Intern. Corp.,* 99 Ill.2d 344, 76 Ill.Dec. 800, 459 N.E.2d 935 (1984), the Illinois Supreme Court, after a discussion of the differences between the contribution and implied indemnity doctrines, refused to resolve the issue since the appellate court did not address it.

In *Lowe v. Norfolk and Western Ry. Co.,* 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (1984), a fifth district court held that "upstream" indemnity is still available in a strict liability case. The court reasoned that the policy behind strict liability, namely to place the onus on the one who has placed a defective product in the stream of commerce and reaped the profit therefrom, would be circumscribed by contribution and its related settlement rules replacing implied indemnity.

In *Morizzo v. Laverdure,* 127 Ill.App.3d 767, 83 Ill.Dec. 46, 469 N.E.2d 653 (1984), a different panel of the first district attempted to clarify the *Van Jacobs* decision. The court, relying on the fact that unlike the Uniform Contribution Among Joint Tortfeasors Act or the New York Contribution Act, the Illinois act did not contain a provision retaining indemnity, reasoned that the Illinois Legislature intended to do away with implied indemnity. The court stated:

As we interpret *Van Jacobs,* this court held that implied indemnity is not extinguished by the passing of the Contribution Act for cases involving some pre-tort relationship between the parties which gives rise to a duty to indemnify, *e.g.,* in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant). In *Lowe* this court held that implied indemnity was still viable with respect to "upstream" claims in a strict liability action.

Except possibly for those causes of action based on the theories of indemnity just enumerated, it is our opinion that the Contribution Act extinguished a cause of action for active-passive indemnity in Illinois.

*Id.* 469 N.E.2d at 658. Judge Shadur of the Northern District of Illinois has adopted *Morizzo* in *U.S. Home Corp. v. Kennedy Construction Co.,* 601 F.Supp. 84 (N.D.Ill.1984).

Finally, the Illinois Supreme Court in *Simmons v. Union Electric Company,* 104 Ill.2d 444, 85 Ill.Dec. 347, 473 N.E.2d 946 (1984), again refused to address the issue since the parties failed to raise or brief it. The *Simmons* court proceeded to apply implied indemnity principles to the facts before it.

For the past two years, this Court has consistently followed the *Van Jacobs* decision and its rationale. *See Mercer v. Shell Oil Co.,* No. 83–3326 (S.D.Ill. Sept. 21, 1984) (Contractor-subcontractor is an sufficient pre-tort relationship to support implied indemnity claim); *Inbodin v. Marathon Oil Co.,* No. 82–3260 (S.D.Ill. Feb. 22, 1984) (no pre-tort relationship which gives rise to duty to indemnify). Like the *Van Jacobs* court, this Court is persuaded that the advent of contribution has made the expansion of implied indemnity no longer necessary. However, contribution has not totally abrogated the implied indemnity doctrine. As the Illinois Supreme Court has so explicitly outlined, indemnity and contribution are different doctrines.

> The elements of contribution and indemnification are different. A claimant seeking the former need show only a common injury which his acts and those of the contributor combined to bring about and which makes them subject to liability in tort, while one seeking the latter must show a pre-tort relationship with the indemnitor and some significant difference in the nature of their respective conduct which justifies a shifting of liability. The measure of recovery is different: indemnity is all or nothing while absent inability to respond in damages by other culpable parties, no party is liable to make contribution beyond his *pro rata* share of the common liability as measured by the extent to which his acts or omissions, whatever their nature, proximately caused the injury.... In addition, the absence of a qualitative difference in the nature of the conduct of the guilty parties will defeat a claim for indemnification ... while it is not fatal to a claim for contribution, except, perhaps, where made so by a statute creating a special standard of conduct and absolute liability for its breach. In short, contribution and indemnification are distinct theories of recovery, and an order dismissing a count seeking either one is not rendered unappealable by the survival of a count seeking the other.

76 Ill.Dec. at 803, 459 N.E.2d at 938 (citations omitted).

While recognizing the distinction, some commentators have taken the position that contribution has fulfilled the implied indemnity function since contribution allows the "court to perform equity directly, without the pretense of applying vague and functional terms." *Implied Indemnity After Skinner and the Illinois Contribution Act: The Case for a Uniform Standard.* 14 Loy.U.Chi.L.J. 531, 549 (1982). Other commentators disagree.

> A role and a meaningful function for indemnity remain. Indemnity may be properly viewed, at least where there is a pre-tort relationship, as simply the extremity of a broad spectrum, the same spectrum within which we find contribution. A party may obtain contribution if he was 1 percent negligent and the indemnitor 99 percent negligent. However, at some point the culpability of the indemnitor may exceed 99 percent. That point is found where the indemnitee is held liable by operation of law—where the indemnitor owed the indemnitee a duty of care not to expose the indemnitee to liability to a third party and as a consequence of the indemnitor's breach of that duty, the indemnitee had been held liable on a technical basis only.

Ferrini, *The Evolution from Indemnity to Contribution—A Question of the Future, If Any, of Indemnity,* 59 Chi. Bar Rec., 254, 268 (1978).

While contribution may theoretically be able to fill the role of indemnity, this Court would be wary of the jury's distribution of fault in a traditional implied indemnity case where the indemnitee was only technically liable. For example, in an employer-employee or contractor-subcontractor situa-

tion, once the jury determined that the employer was vicariously liable, or the contractor technically liable (as in a Structural Work Act case), it would be free to apportion fault as it saw fit. The contractor or employer, who under implied indemnity would be able to recover the entire amount of the damages from the indemnitor, would, more likely than not, pay some portion of the damages; the jury basing its decision more on an allocation of damages and an inability to assign a percentage to "technical negligence" than on an allocation of liability. While this potential abuse is present in any jury case, the Court believes that in the traditional implied indemnity situation, the entire loss should be placed on the indemnitor as a matter of law. Having the technically negligent party pay damages, even minimal damages, would only serve to circumvent the deterrent function of damage awards.

In those cases where a party is more than technically negligent, as where the employer has failed to properly supervise the employee, the Court feels that implied indemnity would no longer be an option to the employer since his negligence has proceeded past the mere technical negligence stage.

The Court recognizes that if contribution were the only option available to the technically negligent party the possibility of settlement would increase. The technically negligent party, apprehensive of the jury's assigning him a percentage of fault, would be more willing to kick some money into the pot available for the plaintiff. However, while settlement should be encouraged, it should not be at the expense of the deterrent objective of damage awards or based entirely on a party's mere apprehension in taking a case before the jury.

As for *Morizzo*, the Court notes that although the opinion talks as if implied indemnity is dead, the court did exempt from the burial the implied indemnity doctrine recognized by *Van Jacobs* and this Court. In any event, this Court does not accept the *Morizzo* assertion that the Illinois Legislature's failure to specify that the Illinois Contribution Act did not impair indemnity meant that the Legislature intended to extinguish indemnity. It is hard to imagine that the Legislature intended to sweep away nearly a century of implied indemnity law in Illinois by a mere omission of language which appeared in the New York and Uniform Contribution Act.

Therefore, the Court is of the opinion, that in order to allege a valid claim for implied indemnity in a negligence case the indemnitee must allege a pre-tort relationship between itself and the indemnitor which gives rise to a duty to indemnify and a qualitative distinction between its actions and the actions of the indemnitor. The types of pre-tort relationships the Court is referring to are lessor-lessee, employer-employee, master-servant, principal-agent, owner-leasee, and contractor-subcontractor. A qualitative distinction between the conduct of the indemnitee and indemnitor exists when the indemnitee is only vicariously liable or technically liable. In a strict liability situation, indemnity will lie only for "upstream" claims.

Applying the *Van Jacobs* standard to the facts at hand, the Court finds that neither Allied, in its third-party complaint, nor Koehring, in its crossclaim, allege the requisite pre-tort relationship which gives rise to a duty to indemnify. Koehring, as manufacturer of the crane in question, does not have a pre-tort relationship with Hall, the plaintiff's employer, since the crane was distributed to Hall by Allied. Further, although Allied as the seller and Hall as the employer-buyer had pre-tort contact, it is not a pre-tort relationship which gives rise to a duty to indemnify since a buyer-seller relationship would never support a traditional indemnity claim.

Further, even if the Allied-Hall relationship were a type of pre-tort relationship recognized under traditional indemnity concepts, Allied has failed to allege a qualitative distinction between the conduct of it and Hall. If Allied were liable under a negligence theory it would not be a result of technical negligence, but rather would be a result of its failure to warn or inspect

the crane before it left its control. If Allied fulfilled these duties, it would not be found liable under a negligence theory. With regard to a strict liability theory, Allied, although potentially liable as a retailer or seller of the alleged defective crane, can not seek indemnity from Hall since Hall is "downstream" in the chain of custody of the crane. *See Lowe v. Norfolk and Western Ry. Co.*, 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (1984).

Accordingly, Hall's Motion to Dismiss Count 1 of the third-party complaint (Document No. 53) and Hall's Motion to Dismiss Count 1 of Koehring's crossclaim (Document No. 55) are hereby GRANTED. Count 1 of the amended third-party complaint and Count 1 of Koehring's crossclaim are hereby DISMISSED.

IT IS SO ORDERED.