DORIS FRAZER, Plaintiff-Appellee, v. A. F. MUNSTERMAN, INC., Defendant and Third-Party Plaintiff-Appellant (Iris G. Dougherty *et al.*, d/b/ a Croft Trailer and Hitch Company, *et al.*, Third-Party Defendants-Appellees; Iris G. Dougherty *et al.*, d/b/a Croft Trailer and Hitch Company, Defendants, Third-Party Appellants; Keith Allen, Third-Party Defendant-Appellee).

Second District Nos. 2—84—1073, 2—84—1206, 2—85—0501 cons.

Opinion filed July 25, 1986.

Wayne B. Giampietro and Gregory N. Freerksen, both of Chicago (De-Jong, Poltrock & Giampietro, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Richard F. Johnson, Hugh C. Griffin, and Diane I. Jennings, of counsel), for Iris G. Dougherty and George Croft Trust.

Sweeney & Riman, Ltd., of Chicago (John S. Huntley and Gary L. Fogle, of counsel), for appellee Beck Corporation.

Robert E. Dyer, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee Keith Allen.

Nancy Jo Arnold, of Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago, for appellee Ring Brothers, Inc.

Bradley B. Falkof, of Griffin & Fadden, Ltd., and Peter C. John, of Phelan, Pope & John, Ltd., both of Chicago, for appellee Dico, Inc.

JUSTICE SCHNAKE delivered the opinion of the court:

These consolidated appeals involve various claims arising out of an automobile collision in which plaintiff, Doris Frazer, was injured when her car was struck by a trailer that had become disengaged from the pickup truck pulling it. Because of settlement which occurred while this case was pending on appeal, the sole issue remaining to be decided is whether the enactment of "An Act in relation to contribution among joint tortfeasors" (Contribution Act) (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) abolished the cause of action for implied indemnity based on upstream strict products liability.

On April 15, 1980, plaintiff was injured when a low-boy trailer broke loose from a pickup truck, crossed the center line of Roosevelt Road in Wheaton, and collided with her vehicle which was traveling in the opposite direction. Plaintiff brought suit against A. F. Munsterman, Inc. (Munsterman), owner of the trailer, Keith Allen, driver and owner of the pickup truck, Robert Sosnowski, alleged to have attached the trailer to the Allen truck, Iris Dougherty and the George Croft Trust, d/b/a Croft Trailer and Hitch Company (Croft), purported seller of the pintle hook/trailer hitch to Munsterman, Ring Brothers, Inc. (Ring), purported seller of the pintle hook/trailer hitch to Croft, and Beck Corporation (Beck), purported manufacturer and seller of the trailer to Munsterman. Third-party defendant, Dico, Inc. (Dico), purported manufacturer of the trailer's braking system, was later

brought into the action by Munsterman and Beck.

While numerous third-party complaints and counterclaims were filed between the defendants, only two are at issue on appeal. They are: (1) Munsterman's indemnity claim against Croft, Ring, Beck (strict products liability and breach of implied warranty) and Dico (strict products liability); and (2) in the event Munsterman's implied indemnity action is allowed, Croft's counterclaim against Allen for contribution as to liability in excess of the settlement.

Prior to trial, Croft, Beck, Ring and Dico entered into a settlement agreement with plaintiff in the amount of $60,000. After Munsterman withdrew his objection to the settlement, the trial court found the settlement to be in good faith. The court then dismissed Croft, Beck, Ring and Dico as defendants and dismissed Munsterman's third-party complaint for contribution. The court had previously ordered that all counterclaims and third-party claims be severed from the underlying action, and plaintiff's action against Munsterman, Allen and Sosnowski proceeded to trial. During the trial, Sosnowski was dismissed as a defendant on plaintiff's motion after he testified that he had nothing to do with attaching the trailer to Allen's truck.

At the close of all the evidence, the trial court directed a verdict in plaintiff's favor against Munsterman on the strict-products-liability count of her complaint. The court found that the pintle hook/trailer hitch was in an unreasonably dangerous condition at the time it left Munsterman's control. The court then submitted the case to the jury on plaintiff's negligence claims against Munsterman and Allen. The jury returned a verdict in favor of Allen but against Munsterman in the amount of $365,538.03. The court entered judgment on the verdict after reducing the amount by $60,000.

After trial, the court dismissed Munsterman's strict-products-liability and breach-of-implied-warranty claims against Croft, Ring, Beck and Dico. The court held that the enactment of the Contribution Act had abolished all actions for implied indemnity in Illinois. The court also dismissed Croft's claim against Allen for contribution in the event that Munsterman's indemnity claim was allowed.

Munsterman appealed separately from the judgment entered against it on the jury's verdict and from the trial court's order dismissing its strict-liability and breach-of-implied-warranty claims. Croft also appealed from the order dismissing its contribution claim against Allen in the event Munsterman's indemnity is allowed. By order of this court, the three appeals were consolidated. While this case was pending on appeal, Munsterman settled with plaintiff so that the sole remaining issue on appeal is the propriety of the trial court's dis-

missal of its strict-products-liability and breach-of-implied-warranty claims.

Prior to 1977, Illinois adhered to the common law rule barring contribution between joint tortfeasors. In that year, our supreme court overturned the long-standing rule against contribution in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849. In 1979, the General Assembly codified *Skinner* by adopting the Contribution Act. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 8-9.) The issue now before this court is what effect, if any, the Contribution Act has on the common law doctrine of implied indemnity.

The question of whether the Contribution Act extinguished the common law doctrine of implied indemnity has generated considerable discussion among the courts and commentators.

While acknowledging the debate, our supreme court has not yet decided the issue. (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 470-71; *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 453-54; *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 350-51.) In *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, our supreme court declared an end to the concept of active-passive indemnity, but declined to include products-liability litigation in that ruling.

■ The decisions of the appellate court have generally agreed that the Contribution Act has extinguished actions based upon the active-passive theory of implied indemnity. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289; *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666; *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610.) The cases, however, split on whether the Contribution Act also extinguished the implied indemnity actions involving a pretort relationship between the parties which gives rise to a duty to indemnify (*e.g.*, lessor-lessee, employer-employee), or upstream claims in strict products liability. (Compare *Heinrich v. Peabody International corp.* (1985), 139 Ill. App. 3d 289, *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, and *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 775 (Downing, J., concurring) with *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, and *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610.)This appeal presents the first opportunity for this court to rule on this issue.

We believe that the effect of the Contribution Act was to completely abolish the doctrine of implied indemnity. We base our decision

upon the purposes and legislative history of the Contribution Act and the historical development of the doctrine of implied indemnity.

 In construing a statute, it is fundamental that the judicial role is to ascertain the intent of the legislature and give it effect. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) In ascertaining the intent of the legislature, it is proper for the court not only to consider the language employed by the legislature, but also to look to the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained. (*People v. Steppan* (1985), 105 Ill. 2d 310, 316.) The two primary purposes of the Contribution Act are the equitable sharing of damages and the encouragement of settlement. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 296.) We find the continued existence of the doctrine of implied indemnity inconsistent with both of these purposes.

 █ Contribution and implied indemnity are distinct theories of recovery. Both their elements and their measure of damages are different. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349-50.) Contribution requires that two or more parties share responsibility for an injury, and it proceeds from the theory that each party should contribute to the judgment in proportion to his or her responsibility. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 291.) Implied indemnity, on the other hand, shifts the entire burden of the judgment to one party. The theory underlying implied indemnity is that the law will place the ultimate liability upon the party whose fault was the primary cause of the injury. (139 Ill. App. 3d 289, 291.) In our view, the duty to share damages in proportion to responsibility is fundamentally inconsistent with the all-or-nothing shifting of damages under the doctrine of implied indemnity. *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 297; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 676.

Further, the coexistence of contribution and implied indemnity as remedies among joint tortfeasors would destroy the Contribution Act's purpose of encouraging settlements. The Contribution Act provides that any potentially liable persons who settles in good faith is discharged from all liability to any other tortfeasor. (Ill. Rev. Stat. 1979, ch. 70, pars. 302(c), (d).) However, faced with the possibility of settling with the plaintiff only to be brought back into the action by a nonsettling defendant, few defendants will be encouraged to settle before trial.

Our conclusion is further supported by the legislative history of the Contribution Act. In 1976, the Judicial Conference Study Commit-

tee on Indemnity, Third Party Actions and Equitable Contributions recommended to the legislature that it adopt the principle of contribution among joint tortfeasors, and that the statute state in part:

> *"Nothing contained in this article shall impair any right of indemnity* or subrogation under existing law except that the right to indemnification of of one personally at fault shall be limited to those circumstances where he merely fails to discover the dangerous condition created by another." (Emphasis in original.) (*Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 772 (citing Report of the Illinois Judicial Conference 198, 226 (1976)).)

Similarly, the Uniform Contribution Among Joint Tortfeasors Act provided in part:

> "This Act does not impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation." 12 U.L.A. sec. 1(f), at 63-64 (1975).

Contrary to the Uniform Act and the recommendations of the Illinois Judicial Conference, however, the legislature did not specifically preserve the right of implied indemnity. Beyond the fact that this suggests a legislative intent to eliminate implied indemnity in active-passive tort cases as discussed in *Morizzo*, we find that it shows a legislative intent to eliminate all forms of implied indemnity, including implied-indemnity claims based on upstream strict products liability.

Lastly, we look at the historical development of the theory of implied indemnity. Illinois had long adhered to the no-contribution rule prior to 1977. The rationale for the rule was that judicial resources should not be expended to assist one wrongdoer against another wrongdoer. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 291.) However, there was also obvious unfairness in a rule which permitted the entire burden of a loss, for which two or more defendants were jointly and unintentionally responsible, to be put onto one defendant alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or the plaintiff's collusion with the other defendant(s). Prosser & Keeton, Torts sec. 50, at 337-38 (5th ed. 1984).

The concept of implied indemnity was developed and expanded by the courts to mitigate the harshness of the no-contribution rule. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 11-12, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S.

Ct. 2849; *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 230.) In fact, it is fair to say that the doctrine of implied indemnity developed "hand-in-hand" with the no-contribution rule. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 293.) The demise of the no-contribution rule, therefore, would also imply the demise of the implied-indemnity doctrine.

Munsterman argues that to extinguish the doctrine of implied indemnity would be unfair and contrary to the policy behind strict liability because it would allow the party primarily responsible for the injury to escape liability by paying a small sum in settlement. We find Munsterman's argument unconvincing for two reasons.

First, Munsterman's argument that the party primarily responsible for the injury will be able to escape liability by settling for a small sum ignores the plain language of the Contribution Act. Section 2(c) of the Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)) requires that the settlement be in good faith and that the amount of any settlement reduces the recovery against the other defendant(s). This provision protects any nonsettling defendant from having to pay a disproportionate share of the liability. If, as Munsterman argues, it got "left holding the bag" because the other defendants settled out of the case for a mere "pittance," it should have contested the settlement. Having failed to do so, it may not now complain.

Second, Munsterman's argument that the elimination of implied indemnity would be contrary to the policy behind strict liability misconstrues this policy. The policy consideration which motivated the adoption of strict liability was that the economic loss suffered by the injured party should be imposed on the one who created the risk and reaped the profit. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 14, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849.) This includes not only the original manufacturers, but everyone from the manufacturers on through the seller. This policy is fulfilled by releasing plaintiffs from proof of privity and negligence. *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 116.

Once the economic loss of the plaintiff has been imposed on *any* one of the parties in the distribution chain, the policy behind strict liability is satisfied. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 14.) The policy reasons for adopting strict liability are not the same as those for determining the ultimate liability in the manufacturer-distributor chain. (70 Ill. 2d 1, 15.) Application of the Contribution Act to determine the proportionate liability as between the defendants is not contrary to the policies behind strict lia-

bility because the liability as between the plaintiff and the defendants remains strict.

Munsterman also argues that the trial court erred in dismissing its indemnity claim against Croft, Ring and Beck for breach of the implied warranty of merchantability under section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—314). Munsterman contends that the Contribution Act did not abolish the Uniform Commercial Code and, therefore, its indemnity claim based on warranty should have been allowed. Third-party defendants Croft and Beck argue that to allow such a recovery would circumvent the Contribution Act.

We agree with Munsterman that the Contribution Act did not abolish section 2—314 of the Uniform Commercial Code. This fact, however, does not lead to the conclusion that its warranty claim should be allowed. To the contrary, we find that under *Wolfe v. Ford Motor Co.* (1982), 386 Mass. 95, 434 N.E.2d 1008, Munsterman's warranty claim is properly considered a claim for contribution which was correctly dismissed in light of plaintiff's settlement with Croft, Ring and Beck.

In *Wolfe*, the occupants of a truck camper were injured in a motor-vehicle accident and obtained judgments against the assembler of the camper truck (Donahue) and the manufacturer of the truck (Ford). After the manufacturer paid the total amount of the judgment, it sought contribution from the assembler. The trial court denied contribution holding that the assembler, who had breached the implied warranty of merchantability, was not jointly liable *in tort* within the meaning of the Massachusett's contribution statute. The Massachusett's contribution statute stated:

> "[W]here two or more persons become jointly liable *in tort* for the same injury to person or property, there shall be a right of contribution among them ***." (Emphasis added.) (G.L. c. 231B, sec. 1(a).)

Section 2(a) of our Contribution Act similarly states:

> "[W]here 2 or more persons are subject to liability *in tort* arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, ***." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 70, par. 302(a).

On appeal, the Supreme Judicial Court of Massachusetts reversed, finding that the assembler's liability for breach of warranty was "in tort" as that term was used in the contribution statute. The court stated:

> "[W]e commented that the theory imposing strict tort liability

on a seller of a product for physical harm to users or consumers (as expressed in Restatement [Second] of Torts sec. 402A [1965]) is very similar to the theory of implied warranty provided by the Uniform Commercial Code, G.L. c. 106, secs. 2—314, 2—318. We noted that the Massachusetts breach of warranty theory was 'as comprehensive as the strict liability theory of [tort] recovery that has been adopted by a great many other jurisdictions [citation], and "as comprehensive as that provided by sec. 402A of the Restatement" [citation]. We concluded that '[t]he Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts sec. 402A (1965).' [Citation.] These cases indicate that, however labeled, the theory under which the plaintiffs obtained judgment against Donahue was in essence similar to strict liability in tort.

\* \* \*

In short, we find no magic in the label 'warranty' but rather we look to the substantive quality of the claims against Donahue and find them to be essentially tort claims. The judge was in error in denying Ford's motion for contribution on the ground that Donahue was not 'jointly liable in tort' within the meaning of G.L. c. 231B, sec. 1(a)." *Wolfe v. Ford Motor Co.* (1982), 386 Mass. 95, 97-100, 434 N.E.2d 1008, 1009-11.

We agree with the court's reasoning in *Wolfe*. In light of the similarities between the actions for strict liability and implied warranty, we find that Munsterman's claim based upon implied warranty falls within the scope of our Contribution Act. A contrary ruling would allow Munsterman to circumvent the provisions of the Act. Having found that Munsterman's warranty claim is within the Contribution Act, the trial court was correct to dismiss it on the basis of the plaintiff's settlement with Croft, Ring and Beck.

For the reasons set forth herein, the judgment of the circuit court of Du Page County is affirmed. Having found that Munsterman's claims for indemnity were properly dismissed, we need not address the issues raised with respect to Croft's counterclaim against Allen.

Affirmed.

REINHARD and STROUSE, JJ., concur.