Ezra CASEY, Sr., as Father and Next Friend of Ezra Casey, Jr., a Minor, Plaintiffs,

v.

WESTINGHOUSE ELEVATOR COMPANY, A DIVISION OF WESTINGHOUSE ELECTRIC CORPORATION, a foreign Corporation, and May Centers, Inc., Defendants.

and

MAY CENTERS, INC., Crossplaintiff/Crossdefendant,

v.

WESTINGHOUSE ELEVATOR COMPANY, Crossdefendant/Crossplaintiff.

Civ. No. 85–3343.

United States District Court, S.D. Illinois.

Dec. 31, 1986.

Joseph E. Hoefert, Alton, Ill., for plaintiffs.

John I. Schaberg, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Belleville, Ill., for Westinghouse Elevator.

Richard E. Boyle, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., for May Centers.

## MEMORANDUM AND ORDER

STIEHL, District Judge:

Before the Court is cross-defendant Westinghouse Elevator Company's (Westinghouse) motion to dismiss Count II of cross-plaintiff, May Centers, Inc.'s (May) crossclaim for contribution.

The original action was filed by Ezra Casey, Sr., as father and next friend of Ezra Casey, Jr., a minor. The amended two-count complaint is based on strict product liability against defendants Westinghouse Elevator Company and May Centers, Inc., and alleges personal injuries to Ezra Casey, Jr. which resulted when his right hand was caught in an open gap on an escalator located in Alton Square Shopping Center (Alton Square). Alton Square is owned and operated by May. Westinghouse is alleged to have manufactured and installed the escalator.

May filed an amended two-count crossclaim against Westinghouse. Count I is based on contribution. Count II sounds in "upstream" implied indemnity. Only Count II is at issue in the motion to dismiss.

This Court is faced with the task of determining whether the common law principle of implied indemnity, in particular "upstream" implied indemnity, is still viable in light of the Illinois Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. ch. 70 § 301 et seq. (1985). The Illinois Supreme Court has raised the issue of whether implied indemnity exists in view of the Act, however, the Court has ruled only to abolish active-passive indemnity, and has refused to rule on indemnity in general. *Allison v. Shell Oil Company*, 113 Ill.2d 26, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986). *See also Van Slambrouck v. Economy Baler*, 105 Ill.2d 462, 86 Ill.Dec. 488, 475 N.E.2d 867 (1985); *Simmons v. Union Electric Co.*, 104 Ill.2d 444, 85 Ill.Dec. 347, 473 N.E.2d 946 (1984); *Heinrich v. Peabody International Corp.*, 99 Ill.2d 344, 76 Ill.Dec. 800, 459 N.E.2d 935 (1984).

Indemnity has been defined as:

[A] common law doctrine providing for the complete shifting of liability on a showing that there was a pretort [sic] relationship between the guilty parties and a qualitative distinction between their conduct.

*Bristow v. Griffitts Construction Co.*, 140 Ill.App.3d 191, 94 Ill.Dec. 506, 510, 488 N.E.2d 332, 336 (1986) *quoting Heinrich*, 76 Ill.Dec. at 803, 459 N.E.2d at 938.

In *Heinrich*, the Supreme Court in 1984 discussed the history of implied indemnity and its difference from contribution. The court recognized that the theories of recovery are different. Contribution is a statutory remedy which provides for a "sharing" of damages payments, and is applicable to all parties who are subject to tort liability arising out of the same injury. Indemnity is a common law remedy which

acts to completely shift liability once a showing is made of a pre-tort relationship between the parties together with a "qualitative distinction between their conduct." *Id.* at 938.

The court also found the elements to be different, as well as the measure of recovery. To assert a claim for contribution, one only need show a "common injury which his acts and those of the contributor combined to bring about and which makes them subject to liability in tort." *Id.* Whereas, a party seeking indemnity must show the pre-tort relationship with the indemnitor, and "some significant difference in the nature of their respective conduct which justifies a shifting of liability." *Id.* This "shifting" factor necessarily results in different recovery as "indemnity is all or nothing," whereas under the Act "... no party is liable to make contribution beyond his *pro rata* share of the common liability as measured by the extent to which his acts or omissions ... proximately caused the injury." *Id.* Also, it is not necessary in contribution to establish the "qualitative difference" in the nature of the parties conduct, while, under the principles of indemnity, failure to establish the difference will defeat a claim for indemnification. *Id.*

The Supreme Court, however, in *Heinrich* did not rule on whether indemnity survived contribution. In fact, the court refused to rule on the propriety of the dismissal of the indemnity count and found "it presupposes the continued vitality of the traditional doctrine of indemnification." The court remanded the case to the First Appellate District for a finding as to the issue of the survival of implied indemnity in light of the Contribution Act.

The First District, following the directives of the Illinois Supreme Court, also reviewed the relationship of these two doctrines. The court recognized that implied indemnity "developed hand-in-hand with the rule against contribution." *Heinrich v.*

*Peabody International Corp.*, 139 Ill. App.3d 289, 93 Ill.Dec. 544, 547, 486 N.E.2d 1379, 1382 (1985), *leave to appeal denied.** The First District found that the implied indemnity did not survive the Contribution Act. In support, the court found the following:

First, contribution is a full and fair remedy among all parties arguably liable for injuries to plaintiffs. Second, the purpose of contribution would be defeated if courts continued to recognize implied indemnity.

*Id.* 93 Ill.Dec. at 549, 486 N.E.2d at 1384. These purposes have been recognized as "the equitable sharing of damages, and the encouragement of settlement." *Id.* *Heinrich* noted that the Contribution Act has established:

[R]elative responsibility as the public policy of Illinois. In a complex and interdependent economy such as ours, it is increasingly likely that two or more separate persons or entities will be partly, but not completely responsible for a particular injury.

*Id.* The court found contribution to be flexible, fair, and an "efficient and effective remedy among tortfeasors ... capable of shifting responsibility entirely to one party if the facts so indicate, and it is capable of apportioning responsibility in response to *far more subtle* factual situations." *Id.* 93 Ill.Dec. at 550, 486 N.E.2d at 1385 (emphasis added).

The First District, therefore, found "ample reason" to abolish implied indemnity as it acts to "subvert the purposes of contribution." *Id.* Further:

Although contribution and implied indemnity are separate causes of action ... both doctrines impose duties which are quasi-contractual in nature.... [a] duty to share damage in proportion to responsibility is *fundamentally inconsistent with the all-or-nothing shifting of damages [in implied indemnity] from one admittedly liable party to another.*

---

* At the time this order was entered, Shepard's Illinois Citations incorrectly listed this case as leave to appeal to the Illinois Supreme Court having been denied. The correct citation should read: *Heinrich v. Peabody International Corp.*, 139 Ill.App.3d 289, 93 Ill.Dec. 544, 547, 486 N.E.2d 1379, 1382 (1985), *leave to appeal granted* (1986).

*Id.*, (emphasis added). This philosophy has been recognized by the United States Supreme Court in *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). The court held that the right of contribution:

> [R]eflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is *sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability.*

*Id.* at 88, 101 S.Ct. at 1579 (emphasis added).

Simarily, other Illinois Appellate districts have also found that implied indemnity did *not* survive the Contribution Act. In the Fifth District case of *Holmes v. Sahara Coal,* 131 Ill.App.3d 666, 86 Ill.Dec. 816, 475 N.E.2d 1383 (1985) the court made a detailed review of the issue, and noted that the question as to whether the Illinois General Assembly intended the Contribution Act to replace implied indemnity has produced much discussion. Quoting Justice Downing's concurrence in *Morizzo v. Laverdure,* 127 Ill.App.3d 767, 83 Ill.Dec. 46, 469 N.E.2d 653 (1984):

> With the passage of the Contribution Act it is reasonable to conclude that the legislature intended that, without qualification, implied indemnity should no longer exist. *I see no reason to distinguish between vicarious liability, indemnity in tort cases, or cases alleging "upstream" strict liability.*

*Id.* 83 Ill.Dec. at 52, 469 N.E.2d 653 at 659 (emphasis added). This Court agrees.

A number of other opinions have looked to the legislative intent as a directive on this issue. *See Frazer v. A.F. Munsterman,* 145 Ill.App.3d 1092, 99 Ill.Dec. 734, 496 N.E.2d 309 (1986). *Bristow v. Griffitts Const. Co.,* 140 Ill.App.3d 191, 94 Ill.Dec. 506, 488 N.E.2d 332 (1986). (Morthland, J. dissenting). Although this Court does not consider legislative intent to be dispositive on the issue, it is, however, instructive. The *Frazer* court reviewed the history of the Contribution Act in detail. Both the Uniform Contribution Among Joint Tortfeasors Act, and the recommendations of the 1976 Judicial Conference Study Committee on Indemnity, Third Party Actions and Equitable Contributions provided for the retention of indemnity in their model statutes. The *Frazer* court reasoned that the lack of such language in the Illinois statute adopted by the legislature clearly reflected a legislative intent to eliminate implied indemnity:

> Contrary to the Uniform Act and the recommendations of the Illinois Judicial Conference, however, the legislature did not specifically preserve the right of implied indemnity. Beyond the fact that this suggests a legislative intent to eliminate implied indemnity in active-passive tort cases as discussed in *Morizzo,* we find that it shows a legislative intent to eliminate all forms of implied indemnity, *including implied indemnity claims based on upstream products liability.*

*Id.* 99 Ill.Dec. at 738, 496 N.E.2d at 313. (emphasis added).

Other Illinois Appellate Courts have found that the failure to include the indemnity provision in the statute was not fatal to its survival. The First District majority in *Morizzo,* 83 Ill.Dec. 46, 469 N.E.2d 653 determined that implied indemnity survives in those cases where there is a pre-tort relationship between the parties "which gives rise to a duty to indemnify," e.g. lessor-lessee, employer-employee, master-servant and upstream claims in a strict liability action. *Id.* 83 Ill.Dec. at 51, 469 N.E.2d at 658. *See also, Lowe v. Norfolk and Western Ry. Co.,* 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (5th Dist.1984); *Van Jacobs v. Parikh,* 97 Ill.App.3d 610, 52 Ill.Dec. 770, 422 N.E.2d 979 (1st Dist.1981); *see also Jethroe v. Koehring Co.,* 603 F.Supp. 1200 (S.D.Ill.1985). However, the rationale presented for the survival of implied indemnity is not persuasive to this Court. Only after much effort have these decisions justified the retention of implied indemnity. *Van Jacobs* and *Jethroe* reasoned that "the advent of contribution has

made the *expansion* of implied indemnity no longer necessary." 603 F.Supp. at 1203. The court in *Jethroe* declined to find that the Legislature through the Contribution Act had swept "away a century of implied indemnity law ... by a mere omission of language...." *Id.* at 1204. *Van Jacobs* reasoned that the Act "permits the courts to place indemnity back upon its theoretical foundation." 52 Ill.Dec. at 773, 422 N.E.2d at 981. However, it seems much more consistent to this Court that, since the doctrine of implied indemnity developed to remedy the harsh no-contribution rule, *Heinrich*, 93 Ill.Dec. at 546–47, 486 N.E.2d at 1381–82, it is therefore logical that with the advent of the Contribution Act, the purpose, and therefore the existence of implied indemnity is no longer viable. *Frazer*, 99 Ill.Dec. at 738, 496 N.E.2d at 313.

This Court finds that contribution can achieve the same results without the need for the artificial requirements of implied indemnity. It is both more logical and simple that the contribution principles of proportionate fault should govern recovery.

It is well established that contribution acts to apportion to each defendant in a tort action his relative share of the damages, while implied indemnity acts to shift liability to another, not necessarily in proportion to the indemnitor's responsibility for the injury. *Holmes*, 86 Ill.Dec. at 823, 475 N.E.2d at 1390. "Such an imposition [the total shifting of the burden] in the so-called exceptional cases creates a scheme according to which a tortfeasor's culpability bears no direct relation to his burden of loss in cases involving vicarious liability or strict 'upstream liability' ..." *Id.* Certainly such an occurrence raises questions as to the equity of the doctrine. As the *Holmes* court so well stated:

> The effect of this scheme [implied indemnity] is to nullify the equitable equation of the degree of responsibility for the tortious acts and the burden of loss for the harm thereby inflicted, *thus undermining the basis upon which the right of contribution, as well as the princi-*

*ples of comparative negligence and comparative fault, rest.*

*Id.* (emphasis added).

Nor is this Court persuaded by the argument that the elimination of implied indemnity is somehow in contravention of the policy behind strict liability. The policy underlying the injured party's economic loss should be borne by the one who is responsible for the creation of the risk, and who reaped the profit from the product. *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 15 Ill.Dec. 829, 835, 374 N.E.2d 437, 443 (1977) *cert. denied*, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). The plaintiffs are not required to prove either privity or negligence. All parties from the product manufacturer to the seller, are included. *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 342, 454 N.E.2d 197, 202 (1983). As was acknowledged in *Skinner*, once the plaintiff's economic loss has been imposed on any of the parties in the chain of distribution the strict liability policy is met. 15 Ill.Dec. at 835, 374 N.E.2d at 443. "Application of the Contribution Act to determine the proportionate liability as between the defendants is not contrary to the policies behind strict liability because the liability as between the plaintiff and the defendants remain strict." *Frazer*, 99 Ill. Dec. at 739, 496 N.E.2d at 314.

Therefore, this Court is persuaded that the passage of the Contribution Act eliminates the need for "upstream" implied indemnity. This Court FINDS that the Contribution Act achieves fair and equitable results in the apportionment of fault without imposing the artificial requirements, and total shifting of responsibility, of implied indemnity. To permit the remedies of implied indemnity to coexist with those of contribution would be in contravention of the express purposes, and not in keeping with the legislative history, of the Contribution Act, namely to encourage settlements and apportion fault.

For these reasons, the Motion of Westinghouse to dismiss Count II of May's crossclaim is hereby GRANTED.

IT IS SO ORDERED.