PAUL THATCHER, Plaintiff-Appellant and Cross-Appellee, v. COMMON-WEALTH EDISON COMPANY, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee (Dow Chemical Company, Third-Party Plaintiff and Defendant-Appellee and Cross-Appellant; Schneider, Inc., Third-Party Defendant and Cross-Appellee; Dow Industrial Service *et al.*, Third-Party Defendants-Appellees).

Third District  Nos. 3—85—0542, 3—85—0581 cons.

Opinion filed September 24, 1986.

536

BARRY, J., dissenting.

Arthur R. Kingery, of Strodel, Kingery & Durree, Associates, of Peoria, for appellant Paul Thatcher.

David J. Dubicki, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellant Commonwealth Edison Company and cross-appellee Schneider, Inc.

Bradley W. Dunham, of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Paul M. Thatcher, Sr., is a 42-year-old boilermaker. On January 29, 1981, he was employed by Schneider, Inc., to fulfill a contract that Schneider had with Commonwealth Edison (ComEd). ComEd is the owner of the Powerton Plant in Pekin, Illinois. ComEd had previously employed Dow Industrial Service, a division of Dow Chemical Company (Dow), to clean out condenser tubes at Powerton. This was to be accomplished by high-pressure water jetting equipment manufactured by Dowell, another division of Dow Chemical. Dow's contract with ComEd provided that Dow personnel would operate its own equipment. However, due to local union contracts, ComEd felt obligated to bring in local boilermakers instead of allowing Dow employees to operate the equipment according to their contract. That is why ComEd brought in Schneider, a local labor broker. As matters ended up, the only personnel employed by Dow were operators for the truck which powered the water jetting equipment and one supervisor for each shift.

The condenser tubes were about seven-eighth inch in diameter and 70 feet long. There were about 28,000 such tubes at Powerton. The tubes were in a honeycomb-like arrangement.

To get to these tubes, the boilermakers had to go through a small manhole to a large water box. They would then stand on a scaffold of a sort to reach the higher tubes. The nature of this scaffold is much in dispute and will be discussed below. The scaffold was built by the boilermakers.

At the beginning of the job, only two men worked inside the water box. On the evening in question, the decision was made to go to three men in the box. It appears that this decision was made by ComEd, which desired to speed up the job since it had to shut down the production of electricity where cleaning was going on.

The equipment in the water box consisted of large, flexible hoses which could be inserted into the tubes. These were activated by the use of foot pedals which were placed on the scaffold. The pressure generated by the water was around 5,000 pounds per square inch. The workers were required to wear full rain gear, hard hats and face shields. All this water splashing about caused the scaffold to be wet and slimy.

At about 9 p.m. on the evening in question, plaintiff was working with two other men on a scaffold. The co-workers testified that the first thing unusual they heard was plaintiff screaming. Plaintiff testified that the scaffold had rocked, causing him to slip, and that he had inadvertently activated the pedal. The water shot into the glove on his left hand and punctured both the glove and his hand. Plaintiff was immediately transported to the emergency room of Pekin Memorial Hospital.

Plaintiff sued ComEd and Dow, charging both with negligence and violation of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69). ComEd and Dow counterclaimed against each other for indemnity and contribution. Dow filed a third-party complaint against Schneider.

Sometime before trial, the court held that implied indemnity no longer existed in Illinois. Accordingly, a number of counterclaims were dismissed. Immediately before trial, plaintiff entered into a settlement with ComEd and Schneider. ComEd agreed to pay $130,000 in cash to plaintiff. This was apportioned at $80,000 for ComEd and $50,000 for Schneider. Schneider also agreed to waive a workers' compensation lien in the amount of $104,798.81. However, it appears that ComEd furnished all the consideration for the settlement. It had previously contracted to insure all of Schneider's workers' compensation liability. It had apparently paid the compensation to plaintiff over the years. One attorney represented both ComEd and Schneider throughout.

ComEd and Schneider then moved for dismissal of all contribution

counts against them. Pursuant to section 2(c) of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 302(c)), the court determined that the settlement was in good faith. Accordingly, it dismissed all contribution claims against Dow. Also, in accordance with section 2(d) of the same act, which provides that a settling tortfeasor is discharged from liability to other tortfeasors, all contribution claims against ComEd and Schneider were dismissed. Section 2(e) of the same act further provides that a tortfeasor who settles with a claimant forfeits any right of contribution from any other tortfeasor who was not a party to the settlement.

Plaintiff and Dow went to trial. The jury returned a verdict of $70,000 for plaintiff on the negligence count, reflecting damages of $140,000 and 50% comparative negligence. The jury found for Dow on the Structural Work Act count. Plaintiff appeals from the jury verdict. ComEd appeals from the dismissal of its implied indemnity counts against Dow. Dow has filed a provisional cross-appeal in the event we rule for plaintiff or ComEd.

### I. IMPLIED INDEMNITY

■■ The doctrine of implied indemnity holds that among joint tortfeasors, where one party is actively at fault and the other is passively at fault, the latter may seek indemnity from the former if there is some form of pretort relationship which would give rise to a duty to indemnify. (*Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979.) Implied indemnity was developed at a time when Illinois did not allow contribution among joint tortfeasors. Hence, if a slightly liable defendant was pursued by plaintiff, that defendant was allowed to pass all of its liability on to a more liable defendant under the appropriate circumstances.

In *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, our supreme court did away with the no-contribution-among-joint-tortfeasors rule. Subsequently, the legislature enacted the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*). In recent years, panels of the appellate court were split wide open on the question of whether implied indemnity survived the passage of the Contribution Act. In fact, the Fifth District Appellate Court was divided among its own panels on this issue. See *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1381; *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 479 N.E.2d 333.

■ The supreme court resolved the issue recently by stating that since Illinois adopted the principles of comparative negligence and apportioning in its case law and by the Contribution Act, "the need for

implied indemnity based upon an active-passive distinction has also evaporated." (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 34, 494 N.E.2d 496, 501.) Although it reserved judgment on the viability of implied indemnity in cases involving different circumstances, the court made it clear that the full cost of tortious conduct can no longer be transferred from one tortfeasor to another on the basis of active/passive indemnity.

■ Logic clearly mandated the result in *Allison,* namely, that the elimination of the ban against contribution among joint tortfeasors rendered the doctrine of implied indemnity vestigial. Also, that the Contribution Act was passed in order to facilitate full and fair settlements according to the relative fault of the parties. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) We also concur with the thorough analysis provided by Justice Lorenz in the remand of the *Heinrich* case (*Heinrich v. Peabody Industrial Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379). To those authorities we would add but the following comments. The gist of *Skinner* and its progeny, particularly *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, and *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, is that parties to a lawsuit should pay damages according to their percentage of fault or should lose the right to recover for that percentage of the damages caused by their own fault. In *Alvis,* the court expressly rejected other formulations of comparative fault and opted for "pure" comparative fault. Although pure comparative fault is not universal in Illinois tort law due to preexisting statutory constraints (*Prewein v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 141, 483 N.E.2d 224), it is certainly pure in the negligence context of this case. Implied indemnity is really nothing more than a variation of the modified comparative fault used in Wisconsin and some other States. The Wisconsin rule states that where a party is more than 50% at fault in causing an accident, it cannot be said that the other party's fault was the proximate cause of the injury. (Schwartz, *Comparative Negligence* sec. 3.5 (2d ed. 1986).) In effect, by allowing a slightly liable defendant to pass on its liability to a more liable defendant, one is essentially ignoring the slightly liable party's breaches of duty. That was not what the *Skinner* or *Alvis* courts intended in putting Illinois on a proportional fault standard.

■ ComEd seeks a different form of implied indemnity against Dow. Rather than basing its claim on active/passive fault, ComEd argues that a negligent defendant may pass on all of its liability to a defendant charged with manufacturing a defective product. This claim is based principally on *Dukes v. J. I. Case Co.* (1985), 137 Ill. App. 3d

562, 483 N.E.2d 1345, where it was held that a defendant sued in products liability could not pass *any part* of its liability on to an injured party plaintiff who was merely negligent in using the defective product. This is clearly the current state of the law, and it has been reinforced by the holding in *Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1. *Simpson* holds that only the assumption of risk or misuse of a defective product by the injured plaintiff can be asserted as a total affirmative defense against him.

■ The rationale in *Dukes* and *Simpson* does not, however, help ComEd in the instant case. First and foremost, it must be borne in mind that ComEd is not an injured *plaintiff*. ComEd is *one of the defendants* accused of causing injury to the plaintiff. ComEd, as already noted, settled its claim with the plaintiff and thereby gave up any right to claim contribution from other alleged tortfeasors. Logically, it would follow that if a party has forfeited a right to partial contribution, he has thereby forfeited his right to total contribution; that is to say, he has forfeited his right to indemnity. Moreover, we have already noted and discussed why we believe, and our supreme court decided in *Allison* (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 495 N.E.2d 496), that the Contribution Act did away with implied indemnity among joint tortfeasors and substituted contribution in its place.

There are other problems with this particular claim. The injured plaintiff made no claim that his injury was caused by the manufacturing of a defective product. Plaintiff's jury verdict and judgment against Dow were grounded in simple common law negligence. Plaintiff's claim against ComEd which was settled was also grounded in negligence. If ComEd had not settled with plaintiff (a situation that does not prevail here), they would be entitled to litigate their right to a percentage contribution based on evidence tending to show that a defective manufactured product was, in part, responsible for the injury. Even in that situation, however, we do not believe that the protective indulgence extended to the injured plaintiff (mere negligent use of the defective product not being a defense) would also extend to other joint tortfeasors. Thus, in a fully litigated trial involving negligence, defective product, Structural Work Act, or whatever, each joint tortfeasor could be held accountable for his proportional share of the injury for whatever reason and from whatever cause. Proportional fault principles would control.

## II. THE JURY VERDICT

Plaintiff argues first that the verdict for Dow on the Structural

Work Act count was against the manifest weight of the evidence.

■ There are three elements to a cause of action under the Structural Work Act. Plaintiff must prove that defendant had charge of the work, that he wilfully violated the Act and that a violation was the proximate cause of an injury to the plaintiff. (*Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 203 N.E.2d 249.) Each of these elements is an issue of fact for the jury.

■ We find that the evidence was sufficiently in conflict on each element that we should defer to the verdict of the jury. Whether Dow had charge of the work is a close question. Dow certainly had input as to how its equipment was to be used. Dow employees actually instructed employees on safe and proper use of this equipment. However, it is also clear that ComEd gave the orders at Powerton on this job. It set the hours which the men were to work. It determined how many men were to go inside the water box. While the Dow-ComEd agreement recited that Dow would control the manner in which the job was completed, it is clear that those terms were intended for situations where Dow personnel were actually doing the cleaning.

It is, also, not clear whether the scaffold in question violated the Structural Work Act. Plaintiff's co-workers testified that the scaffold was solid and did not wobble. Plaintiff's safety expert, while citing numerous ways in which the scaffold went astray of OSHA regulations, did not link any particular violation to plaintiff's injury.

Finally, it is far from certain whether any alleged violation of the Act caused plaintiff's injury. Only plaintiff testified that the scaffold wobbled or rocked. His co-workers on the scaffold both testified that the first thing out of the ordinary was plaintiff's screaming. It is as possible as not that plaintiff slipped on the wet scaffold and hit the trigger pedal while the hose was outside of the tube. Consequently, since the opposite conclusion on all three elements is not clearly evident from the record (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145), the jury's verdict on count I is not against the manifest weight of the evidence.

■ An issue which occupied a goodly portion of the testimony before the jury was plaintiff's physical condition prior to and subsequent to January 29, 1981. Plaintiff had multiple knee surgeries stemming from school yard, service-related and work accidents. He had a serious accident in 1974 where the motorcycle he was driving was hit by a truck, throwing him 56 feet in the air. Plaintiff also suffered back, neck and shoulder injuries in 1969, 1971, and 1977. In 1984, plaintiff had shoulder surgery following an auto accident.

Plaintiff characterizes Dow's efforts to introduce evidence of his

prior accidents as an attempt to show the jury that he is accident prone and/or litigious. His contention is that his prior conditions had all substantially healed at the time of the Powerton incident. Hence, they are not relevant on liability or damages. Dow argues that the evidence of the accidents as well as accompanying expert medical testimony is relevant on the issue of damages. Dow introduced the evidence depositions of a number of physicians who testified that plaintiff had osteoarthritis in both his knees and his cervical spine, cervical radiculitis or nerve-root irritation and other conditions. These physicians testified that these conditions might not only be permanent but could conceivably degenerate. Thus, Dow contends, plaintiff's prior condition is relevant to show that any permanent inability to perform the difficult work of a boilermaker would not necessarily be caused by the damage to plaintiff's left hand.

The leading case in this area is *Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768. In *Marut*, defendant's position was that plaintiff's current condition was caused by her previous injuries. The earlier injuries had been to the neck while the injury at issue was to her lower back. The court held that since there was nothing to show that her current injuries were connected to her prior injuries, it was error to attempt to impeach her on that basis. The supreme court did not, however, discuss that portion of the appellate court's decision concerning damages. In that opinion, defendant sought to introduce testimony from a prior Industrial Commission hearing where the issue of plaintiff's inability to work following the first injuries came up. It was held:

> "This evidence is admissible as going to the question of the appellant's damages. She had testified that she earned a certain amount of money each week and that she planned to return to work as a waitress at the time of her second accident. This testimony shows that she could not have returned to work as a waitress, and shows that her earning power may have been reduced by the first accident with which the appellees here had nothing whatsoever to do.
>
> Such evidence is also admissible to show that the appellant's claimed total disability was not due solely to the second accident. The evidence quoted above is relevant and highly probative of the proposition that all the appellant's disability did not arise from this latter accident, but none of this evidence has anything to do with causation of the injury to the lower spine."

*Marut v. Costello* (1964), 53 Ill. App. 2d 340, 360-61, 202 N.E.2d 853.

We are in complete agreement with the appellate court in *Marut* on this point. Dow had the right to present to the jury its theory that plaintiff's claim of permanent inability to work was not caused entirely by them. In pursuit thereof, it was also not error for Dow to introduce admissions made in previous depositions, interrogatories and complaints where plaintiff had claimed that his injuries were of a permanent nature. Plaintiff had the opportunity to rebut these claims by introducing evidence that he had fully recovered from his previous injuries. There was no error in allowing evidence of prior injuries on the issue of damages.

■■ Plaintiff's next claim is that the court erred in refusing to admit entries from Dow and ComEd logs in which it was stated that the decision to go back to two men in the box was because three men was unsafe. We need not address the issue of Dow's log, since one of Dow's supervisors testified as to the entry in the log. Any error in refusing admission would thus be harmless.

The ComEd log stated, "Went back to two men in each pass for safety." The court granted a motion *in limine* against admission.

We need not discuss the merits of this ruling because any error in refusing to admit this entry was harmless. It certainly was before the jury that ComEd switched from three men back to two following the accident. It was also evident why they did it. Furthermore, because it is also clear that ComEd made these decisions, it is difficult to see what probative value this evidence had against Dow. It tended to show lack of control, rather than having charge of the work.

■■ The next error cited arises from the evidence deposition of one of defendant's medical experts. ComEd elicited direct testimony from the physician. Dow then used leading questions essentially to reinforce the physician's conclusions. Plaintiff objected on the ground that the expert was not adverse to Dow's position. The objection was overruled.

While we agree that this was a technical error, it was not seriously prejudicial. As we held in *Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793, any prejudice which arose from this improper form of questioning could be cured by effective cross-examination by plaintiff. The record reveals that this is exactly what occurred here.

■■ Plaintiff argues that damages of $70,000 were palpably inadequate. Plaintiff had over $11,000 in medical bills. His economist testified that plaintiff stood to lose $288,000 as a result of his injuries.

We cannot agree. To begin with, the jury is free to reject the conclusions of an expert. Moreover, there was considerable controversy

over how the economist arrived at his conclusion. Plaintiff had earned over $18,000 in 1984, the year immediately preceding the trial, but the economist did not have him reaching that figure again until 1998. The average hours worked annually, although drawn from plaintiff's precise records, clearly did not take into account the reduction of hours suffered in the three years preceding the accident. Lastly, the jury was free to reject plaintiff's arguments that he was unable to do substantial work and that his disability was caused solely by this accident.

■■■ Plaintiff takes issue with the attribution to him of 50% contributory negligence. This finding is clearly not against the manifest weight of the evidence. It could easily be inferred by the jury that it was plaintiff's carelessness or inattention which caused him to slip and activate the foot pedal while the hose was out of the tube.

In short, we find that there was no prejudicial error in this case. Since the plaintiff's $70,000 judgment against Dow is less than the pretrial settlement paid by ComEd to the plaintiff, and since Dow is entitled to an admitted credit for not less than $80,000, plaintiff's judgment is, as a practical matter, a nullity. That is to say, plaintiff recovers nothing above the settlement as a result of the trial and judgment. In light of this and our previous rulings, we have no reason to consider Dow's provisional cross-appeal.

Accordingly, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

STOUDER, J., concurs.

JUSTICE BARRY, dissenting:

If it is the majority view that the entire doctrine of implied indemnity was abolished in Illinois with the decisions and legislative enactments recognizing a right of contribution among joint tortfeasors, I cannot agree. The Supreme Court of Illinois recently confirmed the abolition of implied indemnity based on theories of active/passive negligence in a Structural Work Act case but expressly declined to rule on "whether a tortfeasor whose liability is vicariously imposed by policy of law rather than culpability of conduct may shift the whole of its liability to those parties actually and solely at fault." *Allison v. Shell* (1986), 113 Ill. 2d 26, 35, 479 N.E.2d 333. See also *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.

Those cases finding that implied indemnity has survived in some

instances are, in my view, persuasive. One of the first such cases was *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 612-13, 422 N.E.2d 979, where the court said:

"Indemnity derives from principles of contract, and may be express or implied. Application of the doctrine shifts the responsibility from the indemnitee and onto the truly culpable person who in fact caused the loss. (Prosser, Law of Torts 310 (4th ed. 1971).) Implied indemnity classically requires some pretort relationship between the parties which gives rise to a duty to indemnify. See, *e.g., Mierzejwski v. Stronczek* (1968), 100 Ill. App. 2d 68, 241 N.E.2d 573 (lessor and lessee); *Embree v. DeKalb Forge Co.* (1964), 49 Ill. App. 2d 85, 199 N.E.2d 250 (employer and employee); *Blaszak v. Union Tank Car Co.* (1962), 37 Ill. App. 2d 12, 184 N.E.2d 808 (owner and his lessee); *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.* (1951), 343 Ill. App. 148, 98 N.E.2d 783 (master and servant).)

\* \* \*

The contribution act has not extinguished indemnity in Illinois but instead, permits the courts to place indemnity back upon its theoretical foundation. We \*\*\* hold that in addition to a qualitative distinction between the conduct of the parties, a cause of action for indemnity requires a duty to indemnify, arising not from the relative fault of the parties, but from the pretort relationship between the parties."

In *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, the court recognized that strict liability is based upon the policy of placing the onus on the one who has placed a defective product in the stream of commerce and reaped the profit therefrom. In order to give effect to that policy, the courts have recognized "upstream" indemnity claims even to a manufacturer who incorporated a defective part into his final product. According to *Lowe*, the policy underlying strict liability continues to be recognized and so does the right to indemnity in such cases. Contra, *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 653.

Two decisions recognizing that implied indemnity is not extinguished by the Contribution Act in cases involving some pretort relationship between the parties which gives rise to a duty to indemnify and for "upstream" claims in a strict liability action are *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653, and *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 488 N.E.2d 332. To me, these cases represent the better view of the law in Illinois, and I would hold that here the trial court erred when it dis-

missed ComEd's indemnity claim against Dow on the ground that indemnity in product liability cases has been abolished in Illinois.

I also wish to state my disagreement with the *dicta* contained in the last paragraph of the section of the majority opinion titled "I. Implied Indemnity." If ComEd had not settled with plaintiff and all the claims were litigated in one trial, I do not believe that plaintiff's negligence could be considered in allocating liability on the basis of a proportional fault as to Structural Work Act or defective-product claims. The supreme court has held that under the Structural Work Act and product liability, a defendant's liability is not diminished by any negligence attributable to the plaintiff. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 382 (Structural Work Act); *Simpson v. General Motors Corp.* (1986), 108 Ill. 2d 146, 483 N.E.2d 1 (strict product liability).) I cannot agree with the majority that a plaintiff's negligence would be considered by the jury in allocating liability among the defendants on such claims.