HUGH J. HANLON, JR., Adm'r of the Estate of Hugh J. Hanlon III, Deceased, Plaintiff, v. AIRCO INDUSTRIAL GASES *et al.*, Defendants (Kanweld, Inc., Counterplaintiff-Appellee; Airco Industrial Gases, Counter-defendant-Appellant).

First District (5th Division)   No. 85—2847

Opinion filed October 17, 1986.

Wildman, Harrold, Allen & Dixon, of Chicago (James M. Mulcahy and Bruce S. Terlep, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, Daniel J. Zollner, and Diane I. Jennings, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from summary judgment in favor of Kanweld, Inc. (Kanweld), on its counterclaim against Airco Industrial Gases (Airco) for indemnification in an underlying wrongful-death action based on product liability.

The record reveals that on August 23, 1978, Hugh J. Hanlon III, an employee of P.T. Ferro Construction Co. (Ferro), died as a result of injuries he sustained when a pressurized nitrogen-gas container exploded during use on a construction site. The administrator of Hanlon's estate (plaintiff) filed a complaint against Airco and Kanweld as manufacturer and distributor, respectively, of the nitrogen-gas equipment alleging that it was defective because (a) the container and valves were of inadequate strength and thickness to withstand the pressure of the gas and (b) it lacked warnings of the dangers inherent in the use of pressurized gas. In their answers Airco and Kanweld both denied liability and raised, as affirmative defenses, assumption of risk and contributory negligence by Hanlon, and each thereafter filed a third-party complaint for indemnification or, in the alternative, contribution from Ferro on the ground that it had failed to warn Hanlon of the proper use of and precautions to be taken in operating the pressurized gas equipment.

Kanweld then filed its three-count countercomplaint against Airco claiming contractual and implied indemnity or, alternatively, a right to contribution, and subsequently moved for summary judgment asserting that it was entitled to indemnity as a matter of law based upon (1) the "Authorized Distributorship Agreement" between its predecessor-in-interest and Airco, paragraph 19 of which provides:

"The Company [Airco] shall indemnify and hold harmless the Distributor [Kanweld] from and against all loss, cost, damage or expense, including reasonable attorney's fees, incurred by the distributor as a result of its operations as an authorized Distributor of the Company, if caused solely by the negligent

acts or omissions of the Company, its employees, agents or representatives"

and (2) "the theory of active-passive negligence."

Kanweld stated, with respect to contractual indemnity, that the gas cylinder, gauges, and valves involved in the explosion were sold to it by Airco pursuant to the distributorship agreement and that the injuries resulting from the explosion were "caused by the negligent acts or omissions of Airco and not by the [s]ole negligence of [it] or any other acts on its part; and, regarding the implied indemnity claimed in Count II, that it did not design, manufacture, or sell the gas cylinder or the gauges, valves or fittings used in conjunction [therewith]" but "merely acted as a distributor or seller of the pressurized nitrogen gas using cannisters or containers supplied or rented to it by Airco," which were not reasonably safe for their intended use and did not provide adequate warnings of the dangers inherent therein; and that, therefore, the injuries were not caused by it but by the "major fault" of Airco. Attached to its motion was the affidavit of Kanweld's president, Kenneth Unger, who stated that (a) its business was "purchasing and reselling pressurized industrial gases already contained in pressurized gas cylinders and in purchasing liquid nitrogen for vaporization, repackaging and sale of pressurized nitrogen gas contained in pressurized gas cylinders" and (b) according to company records, Kanweld had never supplied to Ferro any regulators, valves, fittings or other appurtenances for use in conjunction with pressurized nitrogen-gas cylinders.

Airco filed a responsive memorandum in which it asserted that the indemnity provision of the distributorship agreement was applicable only where the loss or injury at issue was caused solely by its negligent acts or omissions and that material questions of fact existed as to whether Kanweld was negligent in repairing the regulator involved in the explosion and/or failing to attach adequate warning labels to the equipment which rendered summary judgment premature and improper. Airco also submitted excerpts from the depositions of plaintiff's expert witness. Robert Stannis, a safety consultant engineer, and Leonard Link, Ferro's master mechanic. Stannis testified that as a distributor of compressed gas, Kanweld should have been aware of its hazardous propensities and had a duty to insure that appropriate warning labels were affixed to the nitrogen-gas cylinder but, from his review of the relevant documents and photographs, had failed to do so. Link testified that Kanweld routinely maintained and repaired the regulators and pressure gauges used by Ferro and that it owned only one nitrogen regulator. He identified an invoice received from

Kanweld, dated August 18, 1978, indicating the repair and return to Ferro of an "8427" Airco nitrogen regulator which, to his recollection, was next used the date of the occurrence.

In response and in further support of its motion, Kanweld filed a memorandum in which it argued (1) that because the basis upon which plaintiff brought suit against it was strict liability for distributing an allegedly defective compressed-gas container—the defect being, according to plaintiff's expert, the absence of appropriate warnings—and because it did not add or delete any warnings or otherwise alter the product from its original condition as manufactured by Airco, its liability was derivative from that of Airco and of the type contemplated by (a) the express indemnification provision of the distributorship agreement as well as (b) the doctrine of active-passive indemnity which, despite the general extinction of that doctrine by the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) remains applicable "in cases involving *** upstream claims in a strict liability action;" and (2) that it was neither alleged by plaintiff nor shown by the evidence that it (Kanweld) had repaired the regulator on the apparatus involved in the occurrence or that any alleged repairs were performed negligently so as to have been a contributing factor in the explosion. In support of (2) above, it attached an excerpt from the deposition of its vice-president in which he testified that the "8427" regulator referred to in the invoice identified by Link had "a different configuration of the gauges and bonnet" and therefore was not the same one as that appearing in photographs of the subject apparatus.

After a hearing, the transcript of which is not included in the record, the trial court entered summary judgment for Kanweld on counts I and II for indemnity.[1] A subsequent motion for rehearing was denied, and this appeal followed.

OPINION

■ We recognize that summary judgment is an important tool in the administration of justice (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328), and that it is proper and appropriate where the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457). How-

---

[1]Having found that Kanweld was entitled to the indemnification sought in counts I and II, the trial court made no specific ruling or reference as to count III seeking the alternate relief of contribution.

ever, because it is a drastic remedy, it should be granted only where the evidence, when construed most strictly against the moving party and most liberally in favor of the motion's opponent, establishes that the right to it is clear and free from doubt (*Zanzig v. H.P.M. Corp.* (1985), 134 Ill. App. 3d 617, 480 N.E.2d 1204; *Venus v. O'Hara* (1984), 127 Ill. App. 3d 19, 468 N.E.2d 405), and an order granting summary judgment must be reversed if it is determined by the reviewing court that a material question of fact does exist (*Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155), or that fair-minded persons could draw differing inferences from the undisputed material facts (*Zanzig v. H.P.M. Corp.* (1985), 134 Ill. App. 3d 617, 480 N.E.2d 1204).

With these principles in mind, we first consider the propriety of summary judgment as to count I for contractual indemnity. Airco contends that material questions of fact exist as to whether Kanweld was negligent in (a) failing to affix warning and/or instructional labels to the cannister at issue, and (b) repairing the regulator used in conjunction therewith.

Regarding the warnings, the record discloses that, when deposed by the parties, plaintiff's expert witness testified that Kanweld owned the cannister and that Ferro merely purchased from Kanweld the nitrogen gas contained therein. He also stated that, as a distributor of highly pressurized gas, Kanweld had a duty to insure that labels were affixed to the cannisters it delivered to Ferro warning of the nature and hazards thereof and that any equipment used in conjunction therewith should be rated for the cylinder pressure, and also to provide instructional information concerning the safe handling, use, and storage of compressed gas, but that from his investigation and review of photographs no such labels were affixed or instructional material supplied.

Kanweld acknowledges, both in its pleadings and in this appeal, that it "was under a legal duty to distribute a nondefective product with adequate warnings" and does not dispute Stannis' testimony that it failed to do so. It is Kanweld's position, however, that although "inserted" by Airco, negligence is not an issue in this case because plaintiff's underlying action is not premised upon negligence but, rather, seeks to impose strict liability upon it for distributing a dangerous product without adequate warnings, and that since it did not add, delete or otherwise alter whatever warnings were provided by Airco, the claim against it is one arising out of "its operations as an authorized Distributor of [Airco]" for which indemnity is intended by and expressly provided for in the distributorship agreement. In

Kanweld's words, "[w]hat Airco in effect urges is that the very act which triggers coverage under the indemnity agreement, a claim against Kanweld arising from its activities as an Airco distributor, nullifies the indemnity provision" and that "[u]nder Airco's theory, the fact that Kanweld may be sued in strict product liability because it distributed an Airco product, disqualifies it from ever obtaining indemnity pursuant to the parties' express agreement."

Initially, we disagree with Kanweld's assertion that Airco "inserted" the issue of negligence in this case. As noted in our earlier review of the procedural history of this litigation, Kanweld specifically alleged in paragraph 8 of count I that "the alleged injury to the plaintiff's decedent was caused by the negligent acts or omissions of Airco and not by the [s]ole negligence of Kanweld or any other acts on its part." It was in defense of that allegation and in opposition to summary judgment based thereon that Airco thereafter argued and submitted evidence purporting to show that Kanweld was negligent, that the injuries resulted, at least in part, therefrom and that consequently, Kanweld was not entitled to indemnity under the distributorship agreement which, notwithstanding the language cited by Kanweld imposing a duty upon Airco to indemnify it for expenses "incurred as a result of its operations as an authorized Distributor," explicitly conditions that duty upon Airco's negligent conduct being the sole cause of the injury. Thus, it is clear that the issue of negligence was not raised by Airco but rather by Kanweld and the very terms of the contractual provision upon which it bases its claim for indemnification.

Having found the underlying premise of Kanweld's position to be faulty, it necessarily follows that we cannot agree with the remainder of its argument, which is, in effect, that the mere fact that plaintiff, in his action against it, did not allege that it was negligent but instead sought recovery from it under the more stringent standard of strict liability is determinative of the question whether it was negligent for purposes of obtaining indemnity in its separate counterclaim against Airco. It is our view that, notwithstanding the theory of recovery in the underlying action, the language of the particular indemnity provision before us does not either automatically guarantee or preclude indemnification thereunder but instead requires a determination of the respective negligence, if any, of the parties.

■ Here, the testimony of the safety consultant engineer, that by reason of the hazardous propensities of highly compressed gas Kanweld had a duty to attach warnings to the cannister it leased to Ferro—which Kanweld admits, and that it did not do so—which was

uncontradicted, was the only evidence presented on the issue of warnings. In view thereof, we cannot say that Kanweld has established as a matter of law that it was entitled to summary judgment on its claim for contractual indemnity.

Regarding count II of Kanweld's counterclaim seeking implied indemnity, we note initially that in 1977, the supreme court abrogated the long standing common law rule prohibiting contribution among joint tortfeasors (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849); in 1979 the General Assembly adopted the Contribution Among Joint Tortfeasors Act (the Contribution Act) (Ill. Rev. Stat. 1979, ch. 70, pars. 301 through 305), which essentially codified the *Skinner* ruling; and in 1981, the supreme court adopted the theory of comparative negligence whereby damages are apportioned according to the relative fault of the parties (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886).

The interaction among and cumulative effect of these doctrines has generated considerable discourse and debate in legal literature and the courts, particularly on the question whether by enacting the Contribution Act—which, similar to the doctrine of comparative negligence, apportions damages on the basis of fault—the legislature intended to abolish implied indemnity, a judicially created mechanism to mitigate the harsh effects of the rule barring contribution by placing the burden of liability on the defendant whose conduct was the primary cause of the injury or loss. *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935; *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849.

■ Recently, in *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 495 N.E.2d 496, our supreme court declared that the Contribution Act has, in fact, extinguished causes of action predicated upon the active-passive negligence concept of implied indemnity, stating:

> "Active-passive indemnity, like contributory negligence, perpetuates inequality by its inability to apportion loss and its refusal to grant any relief whatsoever to a party whose conduct is considered 'active' regardless of how much or little other tortfeasors are at fault. *** Having adopted comparative negligence and the principles of apportioning rather than affixing liability, *** the need for implied indemnity *** has also evaporated." (113 Ill. 2d 26, 34, 495 N.E.2d 496, 500-01.)

*Allison* thereby upheld the decisions of this court which have been in general agreement in espousing the view that active-passive implied

indemnity is no longer a viable doctrine. (*Coverdill v. Lurgi Corp.* (1986), 146 Ill. App. 3d 112; *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379; *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 479 N.E.2d 333; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383; *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979.) The supreme court in *Allison* declined, however, to express an opinion on the vitality of that doctrine as it relates to "upstream" claims in product-liability litigation, and the appellate court has been divided on that issue. Compare *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383; *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 775, 469 N.E.2d 653 (Downing, J., specially concurring); with *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 479 N.E.2d 333; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979.

Parenthetically we note that, here, in its motion for summary judgment on count II, Kanweld stated that it sought indemnity from Airco "on the theory of active-passive negligence," where as in this appeal, it defines its claim as one brought "under the theory of implied indemnity applicable to upstream claims in strict product liability actions."

Although we feel that the language originally used by Kanweld tends to further controvert its argument that negligence was not—or should not have been—an issue in this case, our judgment as to count II does not rest thereon because, for the reasons stated in *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379, and the very recent case of *Frazer v. Munsterman* (1986), 145 Ill. App. 3d 1092 (strict-product-liability and breach-of-implied-warranty action), we are of the opinion that passage of the Contribution Act completely extinguished the need for and the vitality of the doctrine of implied indemnity in all forms. See also *Stephan v. Sears, Roebuck & Co.* (1986), 147 Ill. App. 3d 833.

■ As observed in *Heinrich* and *Frazer*, the two primary purposes of the Contribution Act are to apportion damages equitably in proportion to the respective fault of the tortfeasors (Ill. Rev. Stat. 1979, ch. 70, par. 302(b)), and to encourage settlements by providing that any potentially liable person who settles in good faith is discharged from all liability to any other tortfeasors (Ill. Rev. Stat. 1979, ch. 70, pars. 302(c), (d)).

■ The coexistence of implied indemnity and contribution is not only inconsistent with the principle of equitable apportionment but also undermines the legislative goal of encouraging settlement. As stated in *Heinrich*, "[i]f defendants remain liable for implied indemnity among one another, they will have little or no incentive to settle with plaintiff. Unable to buy peace and doomed to further litigation, defendants will have nothing to lose by refusing to settle." (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 298, 486 N.E.2d 1379, 1385.) In contrast, the abolition of implied indemnity would further those goals without defeating the public policy underlying the doctrine of strict liability since as between the plaintiff and the defendants the liability remains strict. It is only after liability has been imposed upon any one of the parties in the chain of distribution that the principles of contribution come into play. (*Frazer v. Munsterman* (1986), 145 Ill. App. 3d 1092.) At that point there is nothing to prevent a party found strictly liable from seeking 100% contribution from another party who was actually and solely at fault. Under these circumstances contribution will achieve the same results as implied indemnity without the need for application of the artificial concepts upon which it is based.

Having concluded that the Contribution Act has abolished implied indemnity in all forms, we therefore hold that Kanweld was not entitled to summary judgment on count II of its counterclaim against Airco.

For the reasons stated, the order of the trial court granting summary judgment for Kanweld on counts I and II of its counterclaim is reversed and the cause is remanded for further proceedings on counts I and III.

Reversed and remanded.

MURRAY and PINCHAM, JJ., concur.