**NATIONAL CAN COMPANY, a Delaware corporation, Plaintiff,**

v.

**VINYLEX CORPORATION, a Tennessee corporation, Defendant.**

No. 87 C 3245.

United States District Court, N.D. Illinois, E.D.

May 26, 1988.

---

Timothy A. Weaver, Samuel B. Isaacson, Pretzel & Stouffer, Chtd., Chicago, Ill., for plaintiff.

Dan Boho, Daniel McGrath, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiff National Can Company ("National") brought a six-count complaint against defendant Vinylex Corporation ("Vinylex"). The dispute between the parties arose from National's purchase from Vinylex of an allegedly defective product. Jurisdiction is proper under 28 U.S.C. sec. 1332. Before the Court is Vinylex's motion to dismiss Count VI of the complaint, in which National asserts a claim for implied indemnity premised on strict liability in tort. For the reasons set forth below, the motion is granted.

## BACKGROUND

National manufactures aluminum bottle caps for sale to manufacturers and bottlers of beverages. National is incorporated in Delaware with its principal place of business in Illinois. Vinylex manufactures extruded plastics, including flexible polyvinyl chloride ("PVC"), which National uses in manufacturing its bottle caps. Vinylex is incorporated in Tennessee with its principal place of business also in Tennessee.

The nature of National's relationship with Vinylex is in dispute; however, the parties agree that Vinylex supplied PVC to National for use in the manufacture of its bottle caps. National sold bottle caps lined with Vinylex's PVC to G. Heileman Brewing Company ("Heileman"), who, in turn, affixed the bottle caps to bottles containing beer. National alleges that the PVC was defective, that it caused Heileman's beer to become contaminated, making the beer unsalable, and that National had to pay Heileman a substantial sum of money for the contaminated beer. National asserts that Vinylex, as the manufacturer of the allegedly defective product, is obligated to indemnify National for its payment to Heileman for the contaminated beer.

## DISCUSSION

### Conflict of Laws and *Erie* Issues

Before turning to the merits of the motion to dismiss, we must determine what law applies. In diversity a federal court must look to the law of the forum in which it sits for substantive law, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the rules governing choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). When the parties briefed the motion to dismiss, both argued that Illinois substantive law applies. However, plaintiff attempted to hedge its bet by asserting that "it would be premature for the Court to force a conflicts-of-law ruling on the pleadings" and that plaintiff reserved its "right to amend its pleadings to expressly invoke Tennessee law should the record support it...." Plaintiff's Mem. in Opp. to Motion to Dismiss at 11. For obvious reasons of judicial economy, we did not wish to rule on the motion on the premise that Illinois law applies, and then, should the result be unfavorable to plaintiff, be faced with a motion asserting that Tennessee law applies. Therefore, we requested the parties to brief the conflict of laws question.[1] In their briefs address-

---

1. We conclude in this opinion that Illinois no longer recognizes implied indemnity as a cause of action. Based on our preliminary review of Tennessee law on implied indemnity, we conclude that it is at least possible that Tennessee law does recognize "upstream" implied indemnity claims, and we will assume *arguendo* that it does. Given this assumption, the outcome here differs depending on whether Illinois or Tennessee law applies, and therefore we must address

ing this question, both parties again maintained that Illinois law applies. Within broad limits, parties can stipulate the substantive law to be applied to their dispute, and that is what we deem them to have done here by maintaining that Illinois law applies. *See Casio, Inc. v. S.M. & R. Co., Inc.,* 755 F.2d 528, 531 (7th Cir.1985) (parties deemed to have stipulated to Illinois law by not objecting to the district judge's application of Illinois law). The parties' agreement that Illinois law governs "is all that is necessary to make it govern." *City of Clinton v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987). Accordingly, we apply Illinois substantive law to the issue of whether National's claim for implied indemnity states a cause of action.[2]

Having determined that Illinois law applies to the issue before the Court, we must next determine what that law is. As we discuss below, the highest state court has not resolved the issue before us, and the appellate courts are divided on the issue. In these circumstances, two approaches for ascertaining state law under *Erie* have been suggested by the judges of this district. Several judges favor the predictive approach, under which a federal court sitting in diversity must predict how the Illinois Supreme Court would decide the issue. *E.g., American Dental Ass'n v. Hartford Steam Boiler Inspection and Ins. Co.,* 625 F.Supp. 364, 366–67 (N.D.Ill.1985) (Plunkett, J.); *Barr Co. v. Safeco Ins. Co.,* 583 F.Supp. 248, 252–55 (N.D.Ill.1984) (Moran, J.); *UNR Industries, Inc. v. Continental Ins. Co.,* 607 F.Supp. 855, 863 (N.D.Ill.1984)

(Hart, J.); *Roberts v. Western–Southern Life Ins. Co.,* 568 F.Supp. 536, 538–45 (N.D. Ill.1983) (Marshall, J.). In making this prediction, a federal court must give due consideration to Illinois appellate court decisions, although it may disregard those decisions if convinced that the Illinois Supreme Court would decide otherwise. *American Dental Ass'n,* 625 F.Supp. at 367 (citing *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 227, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

Judge Shadur, on the other hand, believes that *Erie* dictates a different approach where the appellate courts are divided. Under his analysis, because of Illinois' internal choice of law rules, a federal district judge in the Northern District of Illinois is bound by the decisions of the First District of the Illinois Appellate Court where the action, as here, could have been brought in Cook County Circuit Court. *E.g., Abbott Laboratories v. Granite State Ins. Co.,* 573 F.Supp. 193, 196–200 (N.D.Ill. 1983); *Commercial Discount Corp. v. King,* 552 F.Supp. 841, 847–52 (N.D.Ill. 1982).[3] We need not decide which approach is correct, however, because under either approach we reach the same result: a cause of action for upstream implied indemnity no longer exists in Illinois.

Having addressed these preliminary matters, we now turn to Illinois substantive law on implied indemnity.

### Implied Indemnity

The issue before the Court is whether a cause of action for implied indemnity prem-

---

the conflict of laws issue. *See Zurich Ins. Co. v. Heil Co.,* 815 F.2d 1122, 1123 (7th Cir.1987) ("Conflicts rules are appealed to only when a difference in law will make a difference to the outcome.") (citation omitted).

**2.** National's position that Illinois law applies was naturally influenced by its view that Illinois law is favorable to it and that Tennessee law is unfavorable. We disagree with plaintiff's view of the substantive law. However, the fact that the result is unfavorable to National does not, of course, invalidate its choice of Illinois law.

**3.** In its Answer, defendant Vinylex admitted that it is a corporation doing business within the judicial district comprising the United States District Court for the Northern District, that it is

a resident of this judicial district, and that the claim arose in part within this judicial district. Answer at par. 4. Thus under Illinois venue provisions, this action could have been brought in Cook County Circuit Court. See Ill.Rev.Stat. ch. 110, pars. 2–101, 2–102 (1985).

Under Judge Shadur's analysis, if the action could *not* have been brought in Cook County but could have been brought in another county within the geographic limits of the Northern District, a federal district judge would be required to apply the decisions of the Illinois Appellate Court for the District in which the county of proper state venue lies (for example, the Second Appellate District in the case of a Lake County lawsuit). *Commercial Discount Corp. v. King,* 552 F.Supp. 841, 849–50 (N.D.Ill. 1982).

ised on strict liability in tort survived the enactment of the Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. ch. 70, pars. 301–05 (1985) ("Contribution Act"). At common law, contribution among joint tortfeasors was barred. The judicially-created doctrine of implied indemnity was designed to mitigate the harsh effects of the no-contribution rule. *Skinner v. Reed–Prentice Division Package Machinery Co.,* 70 Ill.2d 1, 12, 15 Ill.Dec. 829, 834, 374 N.E.2d 437, 442 (1977).[4] In *Skinner*, the Illinois Supreme Court declared that the no-contribution rule was no longer valid in Illinois. *Id.* at 13, 15 Ill.Dec. at 834–35, 374 N.E.2d at 442–43. The General Assembly thereafter adopted the Contribution Act, in effect codifying the *Skinner* decision. *Hanlon v. Airco Indus. Gases,* 148 Ill.App.3d 1039, 102 Ill.Dec. 601, 605, 500 N.E.2d 494, 498 (1st Dist.1986).

In *Allison v. Shell Oil Co.,* 113 Ill.2d 26, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986), the Illinois Supreme Court held that after the enactment of the Contribution Act, active-passive indemnity is no longer a viable doctrine. However, the Court on several occasions has declined to resolve the question of whether other forms of implied indemnity are still viable, most recently in *Heinrich v. Peabody Int'l Corp.,* 117 Ill.2d 162, 109 Ill.Dec. 821, 510 N.E.2d 889 (1987),

*aff'g in part, rev'g in part* 139 Ill.App.3d 289, 93 Ill.Dec. 544, 486 N.E.2d 1379 (1st Dist.1985).[5] *See also Allison,* 113 Ill.2d at 27, 99 Ill.Dec. at 116, 495 N.E.2d at 497 (in holding active-passive indemnity has been abolished, "we express no opinion on the continued vitality of implied indemnity" in other contexts).

The Illinois Appellate Courts are divided on the issue. *Compare Hanlon v. Airco Indus. Gases,* 148 Ill.App.3d 1039, 102 Ill. Dec. 601, 500 N.E.2d 494 (1st Dist.1986); *Heinrich v. Peabody Int'l Corp.,* 139 Ill. App.3d 289, 93 Ill.Dec. 544, 486 N.E.2d 1379 (1st Dist.1985), *aff'd in part, rev'd in part,* 117 Ill.2d 162, 109 Ill.Dec. 821, 510 N.E.2d 889 (1987); *Frazer v. A.F. Munsterman,* 145 Ill.App.3d 1092, 99 Ill.Dec. 734, 496 N.E.2d 309 (2d Dist.1986); *Thatcher v. Commonwealth Edison Co.,* 147 Ill.App.3d 534, 101 Ill.Dec. 39, 497 N.E.2d 1352 (3d Dist.1986), *appeal granted,* 113 Ill.2d 585, 106 Ill.Dec. 56, 505 N.E.2d 362 (1987)[6]; *Holmes v. Sahara Coal Co.,* 131 Ill.App. 3d 666, 86 Ill.Dec. 816, 475 N.E.2d 1383 (5th Dist.1985) (all holding implied indemnity was completely abolished by the enactment of Contribution Act); *with Morizzo v. Laverdure,* 127 Ill.App.3d 767, 774, 83 Ill.Dec. 46, 51, 469 N.E.2d 653, 658 (1st Dist.1984) (implied indemnity is still viable in certain defined situations, includ-

---

**4.** Two forms of implied indemnity are the active-passive negligence doctrine and "upstream" implied indemnity. Under the active-passive negligence doctrine, a tortfeasor whose conduct may be characterized as passively negligent may *obtain indemnification from a tortfeasor who* was actively negligent. The existence of a pre-tort relationship between the two tortfeasors is required in order for the doctrine to apply. The basis for allowing indemnity under these circumstances is predicated on a finding of a higher degree of culpability by one tortfeasor, so that placing the entire burden on him is warranted. *Warzynski v. Village of Dolton,* 23 Ill. App.3d 50, 317 N.E.2d 694 (1st Dist.1974). *See generally* 21 Ill.Law and Practice sec. 33 (1977).

In an upstream implied indemnity action, a party who is liable to another for injuries caused by a defective product and who is downstream in the distribution chain (e.g., a distributor or retailer) seeks indemnification from the manufacturer who placed the product, or a component part of it, in the stream of commerce.

**5.** In *Heinrich,* the Appellate Court held that implied indemnity in all its forms had been abolished, and supplanted by, the Contribution Act; accordingly, the Court dismissed the third party plaintiff's claim for implied indemnity. On appeal, the third party plaintiff maintained that its claim for implied indemnity was one based on vicarious liability, and that this form of the doctrine had survived the Contribution Act. The Illinois Supreme Court found it unnecessary to decide whether this position is correct. Instead, the Court assumed the continued viability of the vicarious liability theory and then found that the third party complaint failed to state a cause of action under that theory. Thus the Supreme Court affirmed the Appellate Court's dismissal of the implied indemnity claim on the narrow ground that, under the facts of the case before it, the third party plaintiff failed to state a claim for implied indemnity based on a vicarious liability theory.

**6.** As of this writing, *Thatcher* has been taken under advisement by the Illinois Supreme Court.

ing upstream claims in a strict liability action); *Bristow v. Griffitts Constr. Co.*, 140 Ill.App.3d 191, 94 Ill.Dec. 506, 488 N.E. 2d 332 (4th Dist.1986) (adopting *Morizzo* ); *Lowe v. Norfolk W. Ry.*, 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (5th Dist. 1984) (upstream implied indemnity claims not abolished by Contribution Act).

Similarly, two federal judges in the Southern District of Illinois have reached opposite conclusions on the same issue. *Compare Casey v. Westinghouse Elevator Co.*, 651 F.Supp. 258 (S.D.Ill.1986) (no upstream implied indemnity actions after the Contribution Act) (Stiehl, J.) *with Jethroe v. Koehring Co.*, 603 F.Supp. 1200 (S.D.Ill. 1985) (Foreman, C.J.) (certain forms of indemnity, including upstream claims, still viable). In this district, Judge Hart in *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F.Supp. 919, 930–31 (N.D.Ill.1986) acknowledged the split among the appellate courts, but found it unnecessary to decide the issue.

The First District of the Illinois Appellate Court has held that the Contribution Act abolished implied indemnity in all its forms. *Hanlon v. Airco Indus. Gases*, 148 Ill.App.3d 1039, 102 Ill.Dec. 601, 500 N.E. 2d 494 (1st Dist.1986); *Heinrich v. Peabody Int'l Corp.*, 139 Ill.App.3d 289, 93 Ill.Dec. 544, 486 N.E.2d 1379 (1st Dist. 1985), *aff'd in part, rev'd in part*, 117 Ill.2d 162, 109 Ill.Dec. 821, 510 N.E.2d 889 (1987); *see also U.S. Home Corp. v. George W. Kennedy Constr. Co., Inc.*, 624 F.Supp. 528 (N.D.Ill.1986) (Shadur, J.) (following *Heinrich*). *But see Morizzo v. Laverdure*, 127 Ill.App.3d 767, 83 Ill.Dec. 46, 469 N.E.2d 653 (1st Dist.1984) (noting in *dicta* that certain forms of implied indemnity, including upstream strict liability claims, may remain viable). If we are obliged under *Erie* principles to follow the decisions of the First District, then National cannot state a claim for implied indemnity and Count VI of the complaint must be dismissed.

Alternatively, assuming *Erie* commands that we predict how the Illinois Supreme Court would rule, we reach the same conclusion.

As we have said, the Illinois Supreme Court has expressly declined to resolve the issue or even to express an opinion on it. Thus in predicting how the Supreme Court would rule, we do not have the benefit of rulings from that Court in analogous situations, or even *dicta* on the issue before us, to guide us. *Compare Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir.1987) (in declining to expand Wisconsin strict liability law, the Seventh Circuit was guided by "the clear pronouncement from the Wisconsin Supreme Court to defer to the legislature" on such questions). Although the Illinois Supreme Court in *Allison* held that active-passive indemnity has been abolished, we cannot construe that ruling as an indication that the Court also would find that upstream implied indemnity claims have been abolished, given the fact that the Court has expressly declined to decide the issue. Thus we are left with the Illinois appellate courts' decisions as the only source from which we can predict the high court's result. We have carefully examined the arguments for and against a finding that implied indemnity has been completely abolished. We find persuasive those decisions which hold that it has been abolished, and we predict that if the Supreme Court were to decide the issue, it too would be persuaded by those decisions.

Those courts that have held that the Contribution Act abolished implied indemnity actions reason that the underlying policies of the Act would be thwarted were such actions to survive. *Hanlon*, 148 Ill.App.3d at 1067, 102 Ill.Dec. at 606, 500 N.E.2d at 499; *Frazer*, 145 Ill.App.3d at 1097, 99 Ill.Dec. at 737–38, 496 N.E.2d at 312–13; *Holmes*, 131 Ill.App.3d at 676, 86 Ill.Dec. at 823, 475 N.E.2d at 1390. One of the primary purposes of the Act is the equitable sharing of damages. *Frazer*, 145 Ill.App.3d at 1096, 99 Ill.Dec. at 737, 496 N.E.2d at 312. As the court in *Frazer* explained, "the duty to share damages in proportion to responsibility is fundamentally inconsistent with the all-or-nothing shifting of damages under the doctrine of implied indemnity." *Id.* at 1096, 99 Ill.Dec. at 737, 496 N.E.2d at 312. Moreover, contribution can accomplish the same results as

implied indemnity "and can do so without forcing the jury to apply artificial concepts of implied indemnity." *Heinrich*, 139 Ill. App.3d at 301, 93 Ill.Dec. at 552, 486 N.E. 2d at 1387. We agree with the court in *Heinrich* that jurors are fully capable of weighing the relative responsibilities of strictly liable defendants as well as negligent ones. *Id.*

The second purpose of the Contribution Act, encouraging settlements, also would be frustrated by the continued viability of upstream implied indemnity claims. "Faced with the possibility of settling with the plaintiff pursuant to the Contribution Act only to be brought back into the action by a nonsettling defendant, few defendants would be encouraged to settle before trial." *Frazer*, 145 Ill.App.3d at 1096, 99 Ill.Dec. at 738, 496 N.E.2d at 313. For example, in *Lowe*, the party who refused to settle was rewarded under an upstream implied indemnity theory. Defendants, like those who did settle in *Lowe*, will be reluctant to settle such cases in the future, knowing that they will be forced to litigate implied indemnity claims. *Heinrich*, 139 Ill.App.3d at 300, 93 Ill.Dec. at 552, 486 N.E.2d at 1387.

In addition, as several decisions have noted, the legislative history of the Act lends support to the view that the legislature intended to abolish the doctrine of implied indemnity. At the time the Act was drafted, several sources available to the legislature contained a provision expressly retaining the right to indemnity, yet the Act does not include such a provision. *See, e.g., Heinrich*, 139 Ill.App.3d at 301, 93 Ill.Dec. at 553, 486 N.E.2d at 1388 (citing N.Y.Civ. Prac. sec. 1404(b) (McKinney 1976); Uniform Contribution Among Tortfeasors Act, 12 Uniform Laws Annotated 34, 63–64 (1975); 1976 Report of the Illinois Judicial Conference 198). This silence in the Contribution Act, although not conclusive, suggests that implied indemnity was not intended to survive passage of the Act. *Id.*

In sum, we are persuaded that upstream implied indemnity claims did not survive enactment of the Contribution Act, and that the Illinois Supreme Court, if faced with the issue, would so hold. Therefore, Count VI of plaintiff's complaint fails to state a claim upon which relief may be granted and must be dismissed.

## CONCLUSION

For the foregoing reasons, we find that Illinois law governs plaintiff's claim for implied indemnity. Under either of the two approaches we have discussed for ascertaining Illinois law, we find that upstream implied indemnity actions in Illinois were abolished by passage of the Contribution Act. Accordingly, Count VI of plaintiff's complaint seeking implied indemnity fails to state a claim upon which relief may be granted. Defendant's motion to dismiss Count VI is granted.